[No. E029215. Fourth Dist., Div. Two. Apr. 8, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
RONNIE EARL BAYLOR, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2., 3. and 5.

COUNSEL

Eric S. Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Quisteen S. Shum and Elizabeth S. Voorhies, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

GAUT, J.—

## 1. *Introduction*

In December 1996 and June 1997, in La Quinta and Palm Desert, three women were raped in separate incidents by a man who entered their homes late at night as they slept. All the women said the man wore gloves or mittens. Two women said he wore a tight-fitting cap. One said he wore a jacket and T-shirt. Another described him as wearing a ski mask and a long-sleeved black sweatshirt. DNA evidence connected defendant to the rapes. Defendant offered an alibi defense based on the testimony of his former wife, mother-in-law, and sister-in-law.

A jury convicted defendant of four counts of rape and three counts of burglary involving the three victims. The court sentenced him to a collective total sentence of 100 years to life.

Defendant appeals, challenging his initial detention and the DNA evidence and claiming *Griffin*[1] error. We find no error below.

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## 4. *DNA Evidence*

 In 1987, defendant had previously been convicted of rape involving two victims. That conviction was overturned by the Ninth Circuit Court of Appeals in September 1996 on a petition for writ of habeas corpus.

---

[1]*Griffin v. California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106].
*See footnote, *ante*, page 504.

In March 1994, while defendant was still incarcerated, he was required by former Penal Code section 290.2[10] to provide biological samples for a DNA data bank. Defendant's DNA profile, as derived from those samples, matched the DNA profile identified from the sperm fractions taken from the victims here. Based on the DNA match, defendant was arrested in April 1998 and a search warrant was obtained for additional blood and saliva samples from defendant.

Defendant filed a motion to dismiss the case or, in the alternative, to suppress the DNA evidence on the grounds that defendant's DNA information should have been expunged from the databank after his earlier conviction was reversed. Had the DNA information been expunged, then law enforcement would not have been able to make the DNA match that led to defendant's arrest on these charges. The court denied defendant's motions to dismiss or suppress.

Section 290.2 was repealed in 1998 and succeeded by the DNA and Forensic Identification Data Base and Data Bank Act of 1998, section 295 et seq., which was enacted in 1998 and became effective on January 1, 1999. Section 299 provides, after a case is reversed and dismissed without further prosecution, the DNA information obtained shall be expunged.

One method for expungement is by court order: "The court issuing the reversal, dismissal, or acquittal shall order the expungement and shall send a copy of that order to the Department of Justice DNA Laboratory Director. Upon receipt of the court order, the Department of Justice shall expunge all identifiable information in the data bank and any criminal identification records pertaining to the person."[11] Another method is for the person affected to request expungement.[12] Neither method was followed in this case because section 299 did not exist in September 1996 when defendant's previous conviction was reversed. Because section 299 did not become operative until January 1, 1999, after defendant was arrested, it does not apply here. Furthermore, even if it did apply, subdivision (c) provides that "any . . . warrant . . . or arrest based upon a data bank match is not invalidated due to a failure to expunge or a delay in expunging records."

Instead defendant resorts to a constitutional, rather than a statutory, argument, asserting that he has a due process right to the return of his

---

[10]All further statutory references are to the Penal Code unless otherwise stated.
[11]Section 299, subdivision (a).
[12]Section 299, subdivision (b)(1).

property,[13] i.e., the DNA profile developed from defendant's biological samples. One difficulty with this contention is that defendant's DNA profile was not obtained in a manner violating defendant's constitutional rights. The biological samples were obtained legally in 1994 and the DNA match was established in 1998 before any law requiring expungement became effective.

Defendant cites no authority for the proposition that a constitutional violation may occur retroactively. Case law suggests the opposite. The United States Supreme Court has held that the exclusionary rule does not apply when police act in objectively reasonable reliance on a statute later declared unconstitutional.[14]

Similarly, there is no constitutional violation or infringement of privacy when the police in one case use a DNA profile, which was lawfully obtained in connection with another case. In other jurisdictions, for a variety of reasons, the courts have permitted the use of a legal blood sample or DNA profile, previously obtained, to convict a defendant in an unrelated case. In *Patterson v. Indiana*,[15] the defendant was convicted of one crime based on a DNA analysis derived from a blood sample provided in another case. The court found no reasonable "expectation of privacy in a blood sample lawfully obtained by police."[16] In *Wilson v. State*,[17] the defendant's blood sample, given in 1991, was used for a DNA analysis in 1997. The court said the blood was originally taken legally and could be used again without violating the Fourth Amendment or any constitutional privacy right: "Once an individual's . . . blood sample for DNA testing [is] in lawful police possession, that individual is no more immune from being caught by the DNA sample he leaves on the body of his rape victim than he is from being caught by the fingerprint he leaves on the window of the burglarized house or the steering wheel of the stolen car. . . . [¶] . . . Any legitimate expectation of privacy that the appellant had in his blood disappeared when that blood was validly seized . . . . The further testing of the identical blood sample . . . did not offend constitutional principles."[18] In *Washington v. State*,[19] the court approved the use of blood samples, validly obtained in a previous case, in an unrelated murder case. And, in *Bickley v. State*,[20] the court made the point that "no matter how many times defendant's blood is

---

[13]*People v. Lamonte* (1997) 53 Cal.App.4th 544, 549 [61 Cal.Rptr.2d 810].

[14]*Illinois v. Krull* (1987) 480 U.S. 340, 349-350 [107 S.Ct. 1160, 1166-1167, 94 L.Ed.2d 364].

[15]*Patterson v. State* (Ind.Ct.App. 2001) 744 N.E.2d 945.

[16]*Patterson v. State, supra,* 744 N.E. 2d 945, 947.

[17]*Wilson v. State* (2000) 132 Md.App. 510 [752 A.2d 1250].

[18]*Wilson v. State, supra,* 752 A.2d at page 1272.

[19]*Washington v. State* (Fla. 1995) 653 So.2d 362, 364-365.

[20]*Bickley v. State* (1997) 227 Ga.App. 413 [489 S.E.2d 167].

tested, the DNA results would be identical. What defendant is really object-
ing to is the comparison of his DNA with DNA derived from samples taken
from the victims of" other crimes.[21] But DNA results, like fingerprints, may
be maintained by law enforcement for use in further investigations.[22] We are
not persuaded that a distinction should be made because the previous
conviction was ultimately reversed.

We also reject defendant's effort to assert that he has a property interest in
his DNA profile. Section 1536 provides: "All property or things taken on a
warrant must be retained by the officer in his custody, subject to the order of
the court to which he is required to return the proceedings before him, or of
any other court in which the offense in respect to which the property or
things taken is triable." A DNA profile is information developed by the
Department of Justice. Whether it is a property or thing is not germane here.
The biological samples that supplied the DNA information were not ob-
tained by a warrant but under the authority of section 290.2. Section 1536
does not apply.

The trial court did not err in denying defendant's motions to dismiss and
to suppress.

█ Defendant also attacks the DNA evidence in one other particular. He
maintains that Dr. Ranajit Chakraborty, "a well-known expert in human
population genetics,"[23] misapplied the product rule and should not have been
permitted to testify that defendant had a unique DNA profile that "probably
does not exist in anyone else in the world."

As explained by the California Supreme Court: "The product rule states
that the probability of two events occurring together is equal to the probabil-
ity that the first event will occur multiplied by the probability that the second
event will occur. [Citation.] Coin-tossing is illustrative—the probability of
two successive coin tosses resulting in 'heads' is equal to the probability of
the first toss yielding heads (50 percent) times the probability of the second
toss yielding heads (50 percent), or 25 percent. [Citation.]"[24]

As we understand it, defendant complains that Dr. Chakraborty could not
multiply together the probabilities generated by two different kinds of DNA
tests performed by two different crime laboratories. Defendant has not cited
case law to support this proposition. Although a defense objection appears to

---

[21]*Bickley v. State, supra,* 489 S.E.2d 167, 170.
[22]*Bickley v. State, supra,* 489 S.E.2d 167, 170.
[23]*People v. Soto* (1999) 21 Cal.4th 512, 527, footnote 20 [88 Cal.Rptr.2d 34, 981 P.2d 958].
[24]*People v. Soto, supra,* 21 Cal.4th at page 515, footnote 2.

have been made below, it was not made on the basis that the evidence was not reliable and scientifically acceptable.[25] The defense did not cross-examine Chakraborty on this point, and no expert testified that Chakraborty's method was unreliable or not scientifically acceptable. Therefore, no record permits us to evaluate defendant's claim.

### 5. *Griffin Error**

. . . . . . . . . . . . . . . . . . . . . . . .

### 6. *Disposition*

The judgment is affirmed.

Ramirez, P. J., and McKinster, J., concurred.

A petition for a rehearing was denied May 6, 2002, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 10, 2002. Brown, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.

---

[25]*People v. Leahy* (1994) 8 Cal.4th 587 [34 Cal.Rptr.2d 663, 882 P.2d 321].
*See footnote, *ante*, page 504.