[No. A108693. First Dist., Div. Five. May 24, 2005.]

TARIQ COFFEY, Petitioner, v.
THE SUPERIOR COURT OF SAN FRANCISCO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Jeffrey G. Adachi, Public Defender, Teresa Caffese, Chief Attorney, and Christopher F. Gauger, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Enid A. Camps and Michael Chamberlain, Deputy Attorneys General, for Real Party in Interest.

OPINION

STEVENS, Acting P. J.—Tariq Coffey (Coffey) seeks a writ of mandate requiring the trial court to order the return of DNA samples taken under the purported authority of Penal Code section 295 et seq. (DNA and Forensic Identification Database and Data Bank Act of 1998) (hereafter, the DNA Database Act).[1] Although he pled guilty to a "wobbler" as a felony and the DNA samples were collected, the charge was subsequently reduced pursuant to section 17, subdivision (b), and he was sentenced to a misdemeanor.[2] Coffey contends the samples were obtained in violation of his rights under the Fourth Amendment to the United States Constitution, because the DNA Database Act did not authorize collection of samples from defendants convicted of misdemeanors.

We deny Coffey's petition.

## I. Facts and Procedural History

Pursuant to a negotiated plea agreement, in January 2003 Coffey pled guilty to assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)), as a felony. Although there was no written plea agreement, the terms of the plea were purportedly stated on the record. In furtherance of the agreement, sentencing was set over for one year with the understanding that if Coffey was not arrested during that period, and if he completed a 52-week domestic violence counseling program, he would be sentenced to a misdemeanor. The court stated: "So we can make a determination on the day of sentencing next year if the charge is a misdemeanor or a felony."

At the time of Coffey's plea, former section 296, subdivision (a)(1)(F), of the DNA Database Act required the collection of a DNA sample from a defendant "convicted" of felony assault. At the hearing at which Coffey entered his guilty plea, there was no mention whether he would be required to give DNA samples. The probation report, however, recommended that DNA samples be collected pursuant to section 296.

On January 28, 2003, before sentencing, the San Francisco Sheriff's Department collected DNA samples from Coffey. The following October, Coffey's attorney filed a "nonstatutory" motion in the trial court, seeking return of his blood and saliva samples and expungement of the corresponding DNA information from the state's DNA database. Coffey maintained the

---

[1] Except where otherwise indicated, all statutory references are to the Penal Code.

[2] "Wobblers" are offenses punishable either as felonies or misdemeanors, in the discretion of the court. (See *People v. Holt* (1984) 37 Cal.3d 436, 452, fn. 7 [208 Cal.Rptr. 547, 690 P.2d 1207].)

samples were collected in violation of his Fourth Amendment rights, because the charge against him was to be reduced to a misdemeanor upon his completion of the counseling program, and the DNA Database Act did not authorize the collection of samples from a person convicted of a misdemeanor. The parties disagreed over whether conviction of a wobbler occurred upon entry of Coffey's plea or upon his sentencing. The trial court denied the motion without prejudice.[3]

At the sentencing hearing on March 17, 2004, the court found that Coffey had completed his counseling program and, under the plea agreement, reduced the offense to a misdemeanor pursuant to section 17, subdivision (b), suspended imposition of sentence, and placed Coffey on two years' probation including 30 days in county jail. At the hearing, the parties debated whether Coffey had agreed, as part of his negotiated plea, to provide DNA samples pursuant to the DNA Database Act. The court announced it would not make DNA samples a condition of probation because the charge was reduced to a misdemeanor under section 17, subdivision (b), and Coffey had already provided samples in any event.

On June 17, 2004, Coffey filed a second motion seeking return or destruction of his blood and saliva samples and expungement of his DNA profile from the DNA database. Again he argued that the samples were taken in excess of the authority granted by the DNA Database Act and in violation of his Fourth Amendment rights. As characterized by counsel at the August 2004 hearing, the issue was whether the word "convicted" in the DNA Database Act referred to a point before the defendant was sentenced (e.g., at entry of a guilty plea) or after his sentencing. The trial court denied Coffey's motion, finding that even if conviction occurred at sentencing rather than at the time of the plea, Coffey had not established entitlement to the remedy of expungement under section 299. The court remarked: "[section] 299 of the Penal Code specifically provides four instances . . . where expungement [of DNA samples] is warranted. And [Coffey's situation] doesn't fit any of those four categories."

On September 30, 2004, Coffey filed a third motion on this issue, entitled "MOTION TO RECONSIDER PREVIOUS RULING ON MOTION TO EXPUNGE DNA SAMPLE; MOTION FOR RETURN OF PROPERTY AND TO SUPPRESS EVIDENCE PURSUANT TO PENAL CODE SECTION 1538.5 AND THE FOURTH AMENDMENT." In addition to seeking reconsideration of the denial of his June 17 motion, Coffey contended the DNA

---

[3] Apparently, the court concluded the motion was premature because sentencing had not occurred or Coffey had not completed his domestic violence counseling program. In addition, counsel for the People had not had the opportunity to review defense counsel's supplemental memorandum of points and authorities.

samples should be suppressed and returned pursuant to section 1538.5, as the result of a seizure in violation of the Fourth Amendment. On October 12, 2004, the court also denied this motion, ruling that a guilty plea constituted a conviction for purposes of the DNA Database Act.

Coffey thereafter filed in this court a petition for writ of mandate, seeking reversal of the trial court's decision and an order requiring the return of his DNA samples. We issued an order to show cause why the requested relief should not be granted. Real party in interest filed a return, and Coffey has filed a reply.

## II. *Discussion*

Coffey maintains he is entitled to the return or "expungement" of his biological samples, and expungement of his DNA profile from the state's DNA database, because the samples were seized in violation of his Fourth Amendment rights. After a brief overview of the DNA Database Act, we consider whether the writ of mandate Coffey seeks is precluded by the terms of the DNA Database Act. We then consider the merits of Coffey's argument.

### A. *The DNA Database Act*

■ The DNA Database Act, as amended, governs the collection of DNA samples and specimens from persons convicted of certain crimes. The California Department of Justice serves as a repository for the collected items, performs a DNA analysis, and maintains the DNA profile for future comparison to DNA profiles from samples taken at crime scenes, in order to establish the "identity and origin" of the crime scene samples. (§§ 295.1, subds. (a), (c), 297, subd. (a).)

At the time of Coffey's plea and sentence, former section 296, subdivision (a)(1), read: "Any person who is *convicted* of [a qualifying offense] . . . shall, regardless of sentence imposed or disposition rendered, be required to provide two specimens of blood, a saliva sample, right thumbprints, and a full palm impression of each hand for law enforcement identification analysis." Felony assault was a qualifying offense. (Former § 296, subd. (a)(1)(F).)

The DNA Database Act was modified as of November 2004 by voter initiative known as the DNA Fingerprint, Unsolved Crime and Innocence Protection Act (Proposition 69) (<http//www.voterguide.ss.ca.gov/propositions/prop69text.pdf> [as of May 24, 2005]). Among other things, Proposition 69 expanded the scope of DNA collection to include collection from all persons convicted of—or *who plead guilty* or no contest to—*any* felony offense. (§ 296, subd. (a)(1).)

At the time of Coffey's motions in the trial court, former section 299, subdivision (a), set forth enumerated grounds for expungement. It read: a "person whose DNA profile has been included in the data bank pursuant to this chapter shall have his or her information and materials expunged from the data bank when [1] the underlying conviction or disposition serving as the basis for including the DNA profile has been reversed and the case dismissed, [2] the defendant has been found factually innocent of the underlying offense pursuant to Section 851.8, [3] the defendant has been found not guilty, or [4] the defendant has been acquitted of the underlying offense." In addition, the specimen or samples collected from the defendant would be destroyed. (Former § 299, subd. (c).) Whether to grant or deny the request for expungement was directed to the trial court's discretion. (Former § 299, subd. (b)(1).)[4]

 Under current and former law, the denial of a request for expungement is a nonappealable order and shall not be reviewed by a petition for a writ. (§ 299, subd. (c)(1); former § 299, subd. (b)(1).)

B. *Jurisdiction*

As a threshold matter, we consider whether the order from which Coffey seeks relief is subject to writ review. The Attorney General claims it is not, based on the language of the DNA Database Act. Coffey responds that at least part of his motion was made not under the DNA Database Act, but as a nonstatutory motion for return of property seized in violation of his rights under the Fourth Amendment.

As mentioned, the DNA Database Act in its former and current forms sets forth particular grounds for destruction of DNA samples and expungement of DNA profiles (§ 299, subd. (a)), and then declares that an order denying expungement is not subject to review by petition for writ of mandate. Specifically, under both current and former section 299, "[t]he denial of a request for expungement is a nonappealable order and shall not be reviewed by petition for writ." (§ 299, subd. (c)(1); former § 299, subd. (b)(1).)

Here, the Attorney General argues, Coffey's motion expressly sought relief under section 299, thereby assuming the provision's limitations on appellate review. For example, in his most recent trial court motion, Coffey argued: "THE PROPER REMEDY IS . . . AN ORDER REQUIRING *EXPUNGE-MENT* OF THE [DNA] SAMPLES AND INFORMATION FROM THE DNA DATABANK." (Italics added.) Further, Coffey stated: "Moreover, the Legislature has specified a more comprehensive remedy for erroneous sampling in *section 299*: the issuance of an order requiring expungement of both

---

[4] Current section 299 is to similar effect. (§ 299.)

the materials and the information from the Data Base. Section 299 expressly addresses only situations in which the sampling appears to be authorized at the time it is performed but is subsequently determined to be inappropriate— for example, when a conviction for a qualifying offense is reversed on appeal. The same remedy would logically follow, however, when the sampling is determined to be unauthorized, as here. [¶] In this case, the proper remedy is for this Court to do the following: (1) amend the abstract of judgment to delete the requirement for section 296 sampling and to forward a certified copy of the amended abstract of judgment to the California Department of Corrections, (2) *issue an order in the form dictated by section 299, subdivision (a)*, requiring the destruction of any remaining physical samples taken from defendant and the expungement of all electronic records of those materials, (3) send a copy of that order to the Director of the Department of Justice DNA Laboratory, and (4) order the prosecution to confirm within a reasonable period of time that the Department of Justice has *complied with the order as directed in section 299, subdivisions (a) and (c)*." (Italics added.) Because Coffey sought relief under section 299, the Attorney General contends that writ review is unavailable.

We do not agree. Coffey did not seek relief under section 299 per se. He essentially argued that the collection of the DNA samples violated his Fourth Amendment rights because it was not authorized by the DNA Database Act. Although Coffey asserted that the proper remedy was expungement under section 299 (or a return of property under section 1538.5), in context he was merely attempting to justify a particular remedy by analogy, not undertaking to meet the prerequisites of section 299 or rely on its statutory authority. Similarly, the fact that section 299 (which authorizes *destruction* of DNA samples) does not expressly authorize his request for a literal "return" of his DNA samples is consistent with Coffey's assertion that he was not purporting to obtain relief under the DNA Database Act itself.[5] Because Coffey's motion is not brought solely under section 299, section 299 does not preclude writ review of the denial of his motion.

---

[5] Coffey contends his motion was a nonstatutory motion for return of property. (See *Gershenhorn v. Superior Court* (1964) 227 Cal.App.2d 361, 365, 367 [38 Cal.Rptr. 576] (*Gershenhorn*) [motion to return property lies where property taken without a warrant]; *People v. Lamonte* (1997) 53 Cal.App.4th 544, 552–553 [61 Cal.Rptr.2d 810] [trial court should have granted defendant's motion for return of computer and telephone equipment, which police had retained on the ground it had been used in defendant's crime and was thus contraband].) The Attorney General retorts that a *return* of property is also barred by the terms of the DNA Database Act. Both former and current section 299.5, subdivision (b), declare: "All . . . forensic samples containing biological material retained by the Department of Justice DNA Laboratory . . . are exempt from any law requiring . . . the return of biological specimens . . . ." Even when the removal of a DNA sample is authorized, the sample is to be destroyed, not returned. (§ 299, subd. (c); former § 299, subd. (c).) This statutory language does not purport to limit the remedies available with respect to samples taken in violation of the Fourth Amendment.

The Attorney General also suggests that section 299 governs Coffey's motion even if he had not specifically sought relief under its provisions. Because sections 299 and 299.5 are the only statutes addressing the destruction, expungement, and retention of DNA samples and profiles collected under the DNA Database Act, the Attorney General insists that section 299 and section 299.5 are Coffey's sole remedy and writ review does not exist. (See *People v. Superior Court (Ruiz)* (1986) 187 Cal.App.3d 686, 692 [234 Cal.Rptr. 214] ["a special statute dealing expressly with a particular subject controls over a more general statute covering the same subject matter"].)

We question, however, whether the DNA Database Act could preclude challenges on *constitutional* grounds, as where the defendant's biological specimens and identifying samples were taken from him in violation of the Fourth Amendment as well as the DNA Database Act. Nor are we convinced that the DNA Database Act precludes writ review for such challenges.

For purposes of the matter before us, we will assume that the denial of Coffey's motion is subject to review by petition for writ of mandate.[6] (*Gershenhorn, supra,* 227 Cal.App.2d at p. 367, fn. 1; *People v. Beck* (1994) 25 Cal.App.4th 1095, 1105–1106 [31 Cal.Rptr.2d 44].)

C. *Were the DNA Samples Taken in Violation of the Fourth Amendment?*

■ The nonconsensual extraction of blood and other body fluid samples for identification purposes constitutes a seizure under the Fourth Amendment. (See, e.g., *Schmerber v. California* (1966) 384 U.S. 757, 767 [16 L.Ed.2d 908, 86 S.Ct. 1826]; *People v. Osband* (1996) 13 Cal.4th 622, 673 [55 Cal.Rptr.2d 26, 919 P.2d 640].) The seizure is lawful if authorized under a valid statute. (*U.S. v. Kincade* (9th Cir. 2004) 379 F.3d 813 (en banc).) Here, the specimen was obtained pursuant to the DNA Database Act, which was held constitutional in *Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 505–506 [120 Cal.Rptr.2d 197].

As mentioned, at the time of Coffey's offense, entry of guilty plea, and sentencing, former section 296, subdivision (a)(1), read: "Any person who is *convicted* of [a qualifying offense] . . . shall, regardless of sentence imposed or disposition rendered, be required to provide [DNA samples] . . . ." (Italics added.)

---

[6] Arguably, writ review might be unavailable for another reason. If the order was *appealable*, writ review would be inappropriate unless the appellate remedy was inadequate. (See, e.g., § 1237, subd. (b) [defendant may appeal "[f]rom any order made after judgment, affecting the substantial rights of the party"].) Both Coffey and the Attorney General agree that the order is *not* appealable.

Coffey argues that a "conviction" on a wobbler does not occur until sentencing. Because he was sentenced to a misdemeanor after reduction of the charge under section 17, subdivision (b),[7] and DNA sampling is not required or authorized for a misdemeanor offense, his samples were collected in violation of the Fourth Amendment. Thus, he argues, the samples should be returned and the DNA profile should be removed or expunged. (See *People v. Walker* (2000) 85 Cal.App.4th 969, 971–973 [102 Cal.Rptr.2d 637]; *People v. Sanchez* (1997) 52 Cal.App.4th 997, 1000–1001 [60 Cal.Rptr.2d 880].) The dispositive issue, therefore, is this: where the defendant has pled guilty to a wobbler, does the term "convicted" under the DNA Database Act refer to the entry of the plea or the defendant's ultimate sentence?[8]

## D. *Does "Conviction" Occur at Plea or Sentencing?*

Coffey contends that a "conviction" for a wobbler does not occur until the judge sentences the defendant. In his words, "The essence of a wobbler is that it is neither fish nor foul [felony nor misdemeanor] until the initial sentencing." He cites two cases addressing the interplay of section 17 and wobbler offenses charged under the three strikes law. (*People v. Trausch* (1995) 36 Cal.App.4th 1239 [42 Cal.Rptr.2d 836] (*Trausch*); *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968 [60 Cal.Rptr.2d 93, 928 P.2d 1171] (*Alvarez*).)

In *Trausch*, the prosecution attempted to apply the three strikes law to a defendant who had pled guilty to a wobbler, contending the trial court lacked discretion to reduce the crime to a misdemeanor to avoid the three strikes sentencing enhancement. The Court of Appeal concluded that, notwithstanding the three strikes law, the trial court still had authority under section 17 to determine the nature of the conviction at the time of sentencing. Accordingly,

---

[7] Section 17, subdivision (b), reads: "When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison." Thus, if a judge sentences the defendant to a misdemeanor punishment, the defendant's crime becomes a misdemeanor.

[8] Two issues, not raised directly by the parties in their appellate briefs, are apparent from the record and perhaps to the reader. First, Coffey knew at the time he entered his guilty plea that the charge could be reduced to a misdemeanor at sentencing, yet he apparently did not object when his samples were taken before sentencing. We cannot conclude from this that he waived his constitutional challenges to the collection of his samples, however, as it is not clear he was represented by counsel at the time of the sample collection, or that any purported waiver of his Fourth Amendment rights in this regard was knowing and voluntary. Second, we recognize that the trial court specifically reserved determination of the nature of the charge to which Coffey was pleading until the day of sentencing, stating: "So *we can make a determination on the day of sentencing next year if the charge is a misdemeanor or a felony*." (Italics added.) Because there was no mention of DNA sampling, however, we cannot infer that the trial court meant by this statement to preclude application of the DNA Database Act.

it could not be determined if a predicate felony existed for application of the three strikes law until the trial court imposed sentence on the new offense. (*Trausch, supra*, 36 Cal.App.4th at p. 1247; see *Alvarez, supra*, 14 Cal.4th at pp. 975–976 [no presumption that wobblers, upon plea of guilty, constituted a felony subjecting defendant to imposition of three strikes sentence].)

In reaching their holdings, the courts in *Trausch* and *Alvarez* opined that section 17 leaves the nature of a wobbler conviction to the judge's discretion at sentencing. (*Alvarez, supra*, 14 Cal.4th at p. 975; *Trausch, supra*, 36 Cal.App.4th at p. 1246.) But they also relied on the language of the three strikes law, concluding that the Legislature's failure to make reference to section 17 in section 667, subdivision (c), suggested an intent to permit the trial court to maintain its section 17 authority to determine the nature of the conviction at sentencing. (*Alvarez, supra*, 14 Cal.4th at p. 975; *Trausch, supra*, 36 Cal.App.4th at p. 1247.) Moreover, the three strikes law expressly states that the nature of a "conviction" for three strikes purposes is to be determined at sentencing. (§ 667, subd. (d)(1) [determination of whether a prior felony conviction qualifies as a "strike" "shall be made upon the date of that prior conviction and is not affected by the sentence imposed *unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor*" (italics added)]; see *Alvarez, supra*, 14 Cal.4th at p. 976.) The DNA Database Act, by contrast, does not contain this language.

There are other distinctions between the three strikes sentencing context of *Alvarez* and *Trausch* and the matter before us. At the heart of *Alvarez* and *Trausch* was whether a sentencing judge could be precluded from exercising his discretion to reduce the charge to a misdemeanor, with the consequence that the defendant could be confined in state prison for the rest of his life. By contrast, requiring a defendant to submit samples for DNA analysis neither deprives the judge of his sentencing discretion nor condemns the defendant to lifetime incarceration.

We next consider the more germane opinion of our Supreme Court in *People v. Banks* (1959) 53 Cal.2d 370 [1 Cal.Rptr. 669, 348 P.2d 102] (*Banks*). There, the defendant pled guilty to a wobbler, and imposition of sentence was suspended. (*Id.* at p. 375.) After completing his probationary term, Banks was entitled to have the prior charged offense dismissed, but failed to make the necessary request. (*Ibid.*) Although the guilty plea and order granting probation were entered, no judgment had been pronounced. (*Id.* at p. 376.) Later he was arrested for being a felon in possession of a firearm. (*Id.* at p. 375.) The issue was whether he was a "felon" at the time he possessed the firearm, even though he was entitled to have the former charge reduced to a misdemeanor or dismissed. (*Ibid.*)

The court in *Banks* concluded that the defendant was a felon at the time of his arrest for possessing the firearm. (*Banks, supra,* 53 Cal.2d at pp. 375–376.) The court explained: "Here, *upon his plea of guilty* in the Alameda Superior Court, the defendant *acquired the status*—not then final, and conditionally subject to expungement but nevertheless existing—*of a person convicted of a felony.*" (*Id.* at p. 387, italics added.) This status remains until the charge is in fact reduced to a misdemeanor. (*Id.* at pp. 375–376; see also *Doble v. Superior Court* (1925) 197 Cal. 556, 576–577 [241 P. 852] (*Doble*) [in the case of a wobbler, "the charge *stands as a felony for every purpose up to judgment,* and if the judgment be felonious in that event it is a felony after as well as before judgment; but if the judgment is for a misdemeanor it is deemed a misdemeanor for all purposes thereafter—*the judgment not to have a retroactive effect*" (italics added)]; *People v. Doyle* (1958) 162 Cal.App.2d 158, 161 [328 P.2d 7] [evidence that killing was in the perpetration of a wobbler supports a determination that the homicide was murder in the perpetration of a felony].)

██ Our Supreme Court in *Banks* derived its conclusion from the purpose of section 17: "We recognize that 'conviction' has sometimes been given the meaning of a final *judgment* of conviction [citation], but that meaning does not appear appropriate here. Defendant relies on the familiar rule that 'Where language which is reasonably susceptible of two constructions is used in a penal law, ordinarily that construction which is more favorable to the offender will be adopted.' [Citation.] But that rule will not be applied to change manifest, reasonable, legislative purpose (here, the purpose expressed by *section 17 of the Penal Code*) that an alternatively punishable offense remains a felony until pronouncement of misdemeanor sentence or, if imposition of sentence is suspended, the purpose expressed by section 1203.4 read with section 17 that the offense remains a felony until the statutory rehabilitation procedure has been had . . . ." (*Banks, supra,* 53 Cal.2d at p. 391, first italics in original, second italics added.)

As applied to the matter before us, *Banks* suggests that a plea to a wobbler should be considered a felony conviction until such time as the charge is reduced to a misdemeanor or dismissed. At the time the DNA samples were collected from Coffey, he had pled guilty to the charge of felony assault, and had not yet completed the requirements for reduction of the charge to a misdemeanor. Under the *Banks* rationale, Coffey was therefore subject to the DNA Database Act when his DNA samples were collected, and they were not taken in violation of his Fourth Amendment rights.[9]

---

[9] We do not opine whether the trial court, upon timely application, could stay the collection of the DNA samples until after the determination of the charge as felony or misdemeanor pursuant to section 17, subdivision (b).

Ultimately, the meaning of the term "convicted" in the present case must turn on the context of the DNA Database Act itself. (See *People v. Mendoza* (2003) 106 Cal.App.4th 1030, 1033 [131 Cal.Rptr.2d 375] ["The term 'convicted' has no uniform or unambiguous meaning in California. . . . It sometimes refers to a verdict or guilty plea, and other times it means a verdict or guilty plea and the judgment pronounced on the verdict or plea."].) Its definition is to be derived from the context in which the word is used and " 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " (*People v. Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420].)

■ The language of the DNA Database Act at the time of the collection of Coffey's DNA samples suggests it is a defendant's guilty plea or verdict, not the sentence subsequently imposed, which triggers the DNA collection provision. Former section 296 directed that "Any person who is convicted of any of the following crimes . . . shall, *regardless of sentence imposed or disposition rendered*, be required to provide [DNA samples] for law enforcement identification analysis." (Former § 296, subd. (a)(1).) Because the Legislature did not intend for the defendant's sentence or disposition to effect whether the DNA samples would be collected, it likely intended the term "conviction" to refer to a guilty plea rather than the ultimate judgment rendered after application of section 17. (See also § 295, subd. (h)(1) [DNA samples should be collected from qualifying offenders "as soon as possible after . . . a plea or finding of guilty"].)

■ Moreover, the November 2004 amendments to the DNA Database Act through Proposition 69 confirm that a reduction in a charge pursuant to section 17 does not obviate the defendant's obligation to provide DNA samples. Not only does current section 296, subdivision (b), continue the concept that "[t]he provisions of [the DNA Database Act] and its requirements for submission of [DNA samples] shall apply to all qualifying persons *regardless of sentence imposed*," (italics added) section 299, subdivision (f), now expressly addresses section 17: "Notwithstanding any other provision of law, *including Section* . . . 17 . . . , a judge is not authorized to relieve a person of the separate administrative duty to provide [DNA] specimens, samples, or print impressions required by this chapter if a person has been found guilty . . . of a qualifying offense as defined in subdivision (a) of Section 296." (Italics added.)

Other provisions of the current statutory scheme are in accord. Section 296, subdivision (a), states that "any person" must provide forensic DNA samples if he or she "is convicted of *or pleads guilty or no contest to* any felony offense." (Italics added.) Although in one sense this language in isolation makes it appear that being "convicted" is different than "plead[ing]

guilty," other provisions indicate the language was intended to mean that being "convicted" *includes* "plead[ing] guilty." For example, section 296, subdivision (f), requires the trial court to verify that the DNA samples have been obtained, "[*p*]*rior* to final disposition or sentencing." (Italics added; see also § 296, subd. (d) [at sentencing prosecutor must verify that DNA samples have been taken or are scheduled to be taken].)

■ Coffey argues that the new language in sections 299 and 296 represents a change in the law or, at the least, demonstrates that the prior statutory language was ambiguous and therefore should be interpreted in his favor. We do not agree. While Proposition 69 did expand the law in some respects (e.g., *all* felonies as opposed to enumerated felonies), the language relevant to the issue before us merely clarified existing law. (See § 295, subd. (b)(3) ["It is necessary to enact this act . . . in order to clarify existing law and to enable the state's DNA and Forensic Identification Database and Data Bank Program to become a more effective law enforcement tool."].) A legislative attempt to clarify a perceived ambiguity in statutory language does not necessarily reflect a *change* in the law, or even that the language was ambiguous in a legal sense. (See *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) In this case, application of traditional canons of statutory interpretation (e.g., reading the statutory scheme as a whole) reveals that the prior statutory language was *not* ambiguous. The new statutory language merely continues existing law and confirms that our interpretation is correct.[10]

Coffey's other arguments lack merit as well. He contends that, if the felony nature of a wobbler may be determined before sentencing for purposes of compelling DNA samples, a prosecutor could compel some defendants to provide samples by reducing their charges to misdemeanors late in the process, while defendants whose charges are reduced earlier would not have to provide samples. He claims this would be in violation of equal protection rights. We do not agree. If a defendant pleads guilty to a wobbler as a felony, he must provide samples; if he does not want to provide samples, he does not have to plead guilty. The decision is in the hands of the defendant.

---

[10] Coffey brings to our attention the recently decided federal court decision in *Weber v. Lockyer* (2005 N.D.Cal.) 365 F.Supp.2d 1119. The decision refers to an Attorney General's bulletin advising law enforcement personnel that " 'Proposition 69 does not authorize DNA sample collection for any arrest that occurred before November 3, 2004, nor does it authorize DNA sample collection upon arrest based on prior felony convictions or adjudications of record.' " (*Weber, supra,* at p. 1122, italics omitted.) The limitations on the extent to which Proposition 69 authorizes DNA sample collection for prior *arrests*, however, does not lead us to believe Proposition 69 should be ignored in discerning legislative intent as to the meaning of the term "conviction." Proposition 69's extension of the DNA Database Act to "arrests" was new, while DNA sampling upon certain "convictions" was not.

Along similar lines, we see no significance to the fact that *charging* a defendant with a wobbler as a felony is a prosecutorial decision, while determining whether to impose a felony *sentence* is a judicial decision. The fact remains that by pleading guilty to a wobbler *as a felony*, the defendant assumes not only the possibility that his charge will be reduced to a misdemeanor (or even the certainty it will be reduced upon fulfillment of stated contingencies), but also the reality that *until* such reduction has been made his status remains that of a person who has admitted guilt to a felony offense.

Lastly, Coffey argues, if a guilty plea to a wobbler as a felony triggers DNA sample collection, the constitutional separation of powers is violated because trial courts are divested of the ability to reduce the crime to a "misdemeanor for *all* purposes" (italics added) under section 17, subdivision (b). Not so. In the first place, reduction of the charge under section 17 renders it a misdemeanor for all purposes *thereafter*, without any retroactive effect. (*Doble, supra,* 197 Cal. at pp. 576–577.) Furthermore, since the definition and consequence of a "misdemeanor" is a creation of the Legislature, the term "all purposes" merely refers to the purposes delineated by the Legislature. And because the Legislature has determined that a defendant whose sentence is reduced to a misdemeanor under section 17, subdivision (b), *must* provide DNA samples (§ 296), it cannot be that a defendant is insulated from providing DNA samples merely because his sentence is reduced to a misdemeanor under section 17, subdivision (b).

In sum, for purposes of the DNA Database Act, Coffey was convicted of a felony when he pled guilty to a wobbler offense as a felony. He was therefore subject to the DNA Database Act when his DNA samples were taken, and the collection of the samples was lawful under the Fourth Amendment. Because the samples were lawfully collected, there is no constitutional right to their return. (*People v. Baylor* (2002) 97 Cal.App.4th 504, 508 [118 Cal.Rptr.2d 518] [no constitutional right to return of DNA profile where specimen was lawfully collected].) Nor does section 299 of the DNA Database Act permit expungement of the DNA profile (or destruction of the samples or specimens) merely because the charge was subsequently reduced to a misdemeanor: the DNA Database Act permits expungement only on limited grounds not applicable here. Thus, although Coffey is not presently a "felon," there is no authority for the return of the samples or expungement of his profile from the state DNA database.

### III. *Disposition*

The order to show cause, having served its purpose, is discharged. The petition for writ of mandate is denied.

Simons, J., and Gemello, J., concurred.

A petition for a rehearing was denied June 16, 2005, and the opinion was modified to read as printed above.