Filed 4/28/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>J.C.,<br><br>        Defendant and Appellant. | A146103<br><br>(Contra Costa County<br>Super. Ct. No. J12-00416) |

In 2012, J.C. (minor) admitted an allegation of second degree burglary by shoplifting, a violation of Penal Code sections 459 and 460, subdivision (b) and, at the time, a felony. In November 2014, the electorate passed Proposition 47, the Safe Neighborhoods and Schools Act, which reduced several crimes from felonies to misdemeanors. Among these was shoplifting, so long as the stolen property was worth less than $950. Proposition 47 also allowed a person serving a felony sentence for a crime reduced to a misdemeanor to petition the court for redesignation of the conviction and a reduction in sentence. Pursuant to this provision, the minor petitioned to reduce her felony violation to a misdemeanor. In addition, the minor sought to have her DNA record expunged from the state databank, on the theory she would not have been required to provide a DNA sample as a misdemeanant. While the juvenile court reduced her violation to a misdemeanor, it declined to order expungement of the minor's DNA record.

We affirm the denial of the minor's request for DNA record expungement. Since the filing of the minor's request, the Legislature has enacted Assembly Bill No. 1492

(2015–2016 Reg. Sess.) (hereafter Bill No. 1492), which prohibits the granting of a request for expungement in connection with a petition for recall of sentence under Proposition 47. Because Bill No. 1492 clarifies, rather than changes, the meaning of the relevant provisions of Proposition 47, the bill precludes the granting of requests for expungement made prior to its enactment.

## I. BACKGROUND

The minor was made a ward of the juvenile court pursuant to Welfare and Institutions Code section 602 in 2012, after she admitted committing second degree burglary by shoplifting, a felony at the time. (Pen. Code,[1] §§ 459, 460, subd. (b).) In connection with that admission, the minor was required to submit a DNA sample to the state's databank.

In June 2015, the minor filed a petition seeking relief under section 1170.18, which had been enacted the prior year by the passage of Proposition 47. Among other changes to California criminal law, Proposition 47 reduced several crimes from felonies to misdemeanors, including the shoplifting of property valued at less than $950. (See §§ 459.5, 490.2.) Under section 1170.18, any person "currently serving a sentence" for one of the crimes reduced from a felony to a misdemeanor by Proposition 47 is permitted to petition for a recall of sentence. (§ 1170.18, subd. (a).) Upon receipt of such a petition, the trial court must reduce the defendant's conviction to a misdemeanor and resentence him or her under the amended statute, unless the court determines the change would pose an unreasonable risk to public safety. (§ 1170.18, subd. (b).) In her petition, the minor argued the value of shoplifted property underlying her violation was less than $950, entitling her to a redesignation of the violation from a felony to a misdemeanor, a reduction in her maximum term of confinement to six months, and expungement of the record of the DNA sample she was required to provide.[2]

---

[1] All subsequent statutory references are to the Penal Code.

[2] When the record of a person's DNA sample is expunged, "his or her DNA specimen and sample [is] destroyed and searchable database profile [is] expunged from the databank program." (§ 299, subd. (a).)

2

The juvenile court granted the petition in part, redesignating her violation and reducing her maximum term of confinement, but the court declined her request for expungement of the DNA record. The court relied on *Coffey v. Superior Court* (2005) 129 Cal.App.4th 809 (*Coffey*) in concluding Proposition 47 does not require expungement, despite the reduction of the minor's violation from a felony to a misdemeanor.[3]

Since the juvenile court's denial of the minor's request for expungement of her DNA record, there have been two legal developments of note. At the time of the court's ruling, there was no published appellate decision bearing on the expungement of DNA records under section 1170.18. That changed on July 23, 2015, when the Fourth Appellate District issued *Alejandro N. v. Superior Court* (2015) 238 Cal.App.4th 1209 (*Alejandro N.*), which holds that a minor is entitled to expungement of his or her DNA record when the minor's violation is reduced from a felony to a misdemeanor under section 1170.18, assuming there is no other reason to retain the record. (*Alejandro N.*, at pp. 1229–1230.)[4] Second, on October 4, 2015, the Governor signed Bill No. 1492. (Stats. 2015, ch. 487.) Among other things, Bill No. 1492 amended section 299, which governs the expungement of DNA records, by inserting a reference to section 1170.18 into a list of statutes that do *not* authorize a judge to relieve a person of the duty to provide a DNA sample.

## II. DISCUSSION

Relying on *Alejandro N.*, the minor contends the juvenile court was required to grant the request to expunge her DNA record. The Attorney General argues *Alejandro N.* was wrongly decided, and, in any event, Bill No. 1492 represents a legislative declaration that section 1170.18 was never intended to authorize expungement. We need not address

---

[3] The juvenile court's rationale for denying DNA record expungement was articulated in a different case, but the parties in this matter agreed to be bound by the court's ruling in that case.

[4] The minor sought reconsideration of the court's denial of record expungement after the issuance of *Alejandro N.*, but the motion was denied.

the validity of *Alejandro N.* because we conclude Bill No. 1492 requires the denial of the minor's request for expungement.

**A.** *Governing Law*

### 1. Proposition 47

The voters enacted Proposition 47 on November 4, 2014, effective the next day. (Cal. Const., art. II, § 10, subd. (a); *People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108 (*Lynall*).)  As summarized by the Legislative Analyst, the proposition "reduces penalties for certain offenders convicted of nonserious and nonviolent property and drug crimes" and "allows certain offenders who have been previously convicted of such crimes to apply for reduced sentences." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis by the Legis. Analyst of Prop. 47, p. 35 (Ballot Pamphlet).)  One of those "nonserious and nonviolent property and drug crimes" is shoplifting, so long as the value of the stolen property is less than $950.  (Ballot Pamphlet, *supra*, text of Prop. 47, § 5, p. 71.)  The purpose of this and other similar changes was "to ensure that prison spending is focused on violent and serious offenses [and] to maximize alternatives for nonserious, nonviolent crime."  (Ballot Pamphlet, *supra*, text of Prop. 47, § 2, p. 70.)

Proposition 47 also added section 1170.18 (Ballot Pamphlet, *supra*, text of Prop. 47, § 14, pp. 73–74), which provides a remedy for persons previously convicted of a felony "who would have been guilty of a misdemeanor under [Proposition 47]" had it been in effect at the time of their offense.  (§ 1170.18, subd. (a).)  Under section 1170.18, subdivision (a), a person "currently serving a sentence" for such a conviction "may petition for a recall of sentence" and "request resentencing" in accordance with the statutes as amended by Proposition 47.  Section 1170.18, subdivision (b) specifies the procedure for a trial court to follow upon receiving such a petition.  If the trial court finds "the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . , unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."

4

Section 1170.18, subdivision (k) imposes only one qualification on the recall of these felony convictions: "Any felony conviction that is recalled and resentenced under subdivision (b) . . . shall be considered a misdemeanor for all purposes, except that such resentencing shall not permit that person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction [for being a felon in possession of a firearm]."

## 2. DNA Collection

California law requires the collection of tissue samples for DNA analysis from all persons convicted of felonies (§§ 295, 296, subd. (a)(1)), adults arrested or charged with a felony (§ 296, subd. (a)(2)(C)), and all persons required to register as a sex or arson offender as a result of the commission of a felony or misdemeanor (*id.*, subd. (a)(3)). Except as provided in section 296, subdivision (a)(3), persons convicted solely of misdemeanors are not required to provide DNA samples. (*Alejandro N., supra*, 238 Cal.App.4th at p. 1227.)

Under section 299, a person can obtain expungement of his or her DNA records from the databank "if the person has no past or present offense or pending charge which qualifies that person for inclusion within the [DNA collection program] and there otherwise is no legal basis for retaining" the records. (*Id.*, subd. (a).) Among other circumstances, a request for expungement may be made if a felony arrestee is not timely charged, a qualifying conviction is reversed and the charges dismissed, or a person is acquitted of a qualifying offense. (*Id.*, subd. (b).)

Prior to the enactment of Bill No. 1492, former section 299, subdivision (f) stated: "Notwithstanding any other law, including Sections 17, 1203.4, and 1203.4a, a judge is not authorized to relieve a person of the separate administrative duty to provide [a DNA sample] if a person has been found guilty or was adjudicated a ward of the court by a trier of fact of a qualifying offense as defined in subdivision (a) of Section 296, or was found not guilty by reason of insanity or pleads no contest to a qualifying offense as defined in subdivision (a) of Section 296." Section 299, subdivision (f) (hereafter section 299(f)) has been interpreted to preclude a defendant from obtaining expungement of his or her

DNA record despite the reduction of a felony conviction for a wobbler offense to a misdemeanor. (*Coffey, supra,* 129 Cal.App.4th at pp. 820–823.)

### 3. *Alejandro N.*

In *Alejandro N.*, the court relied on section 1170.18, subdivision (k) in concluding a felony conviction redesignated a misdemeanor under Proposition 47 cannot support retention of a person's DNA record. As noted, section 1170.18, subdivision (k) states that a felony redesignated by Proposition 47 shall be treated as a misdemeanor "for all purposes," other than a continued ban on firearms possession. *Alejandro N.* reasoned, "Because the statute explicitly addresses what, if any, exceptions should be afforded to the otherwise all-encompassing misdemeanor treatment of the offense, and because only the firearm restriction was included as an exception, the enactors effectively directed the courts not to carve out other exceptions to the misdemeanor treatment of the reclassified offense absent some reasoned statutory or constitutional basis for doing so." (*Alejandro N., supra*, 238 Cal.App.4th at p. 1227, fn. omitted.) The court in *Alejandro N.* concluded its decision was consistent with the expungement provisions of section 299 because a felony redesignated a misdemeanor by Proposition 47 "*no longer qualifies as an offense permitting DNA collection*" and is therefore "outside the matters contemplated by the Penal Code DNA expungement statute." (*Alejandro N.*, at p. 1229.)

### 4. Bill No. 1492

Bill No. 1492, signed into law by the Governor two months after *Alejandro N.* was issued, was intended primarily to respond to *People v. Buza* (2014) 231 Cal.App.4th 1446, review granted Feb. 18, 2015, No. S223698 (*Buza*), a decision currently pending review by the Supreme Court.[5] In *Buza,* Division Two of this court found the requirement of DNA sampling upon arrest to violate article I, section 13 of the California Constitution. In responding to the potential for affirmance of *Buza*, Bill No. 1492

---

[5] Section 1 of Bill No. 1492 states: "It is the intent of the Legislature to limit the analysis of [DNA samples] taken from felony arrestees . . . only to the extent required by the decision in *People v. Buza*, and to further the purposes of [the requirement of arrestee sampling] in light of that decision." (Stats. 2015, ch. 487, § 1.)

enacted two alternative versions of sections 298 and 299. One version is currently effective and will remain so if the Supreme Court reverses *Buza*. (Stats. 2015, ch. 487, §§ 2(d), 4(g).) If *Buza* is affirmed, the other version will be become effective. (Stats. 2015, ch. 487, §§ 3(d), 5(g).)

The portion of Bill No. 1492 pertinent to our concerns will persist regardless of the fate of *Buza* because it is contained in both of the versions of section 299 enacted by the bill. That portion amends section 299(f) by inserting "1170.18" into the list of statutes that do not authorize a judge to relieve a person of the duty to provide a DNA sample. As a result, section 299(f) now reads: "Notwithstanding any other law, including Sections 17, 1170.18, 1203.4, and 1203.4a, a judge is not authorized to relieve a person of the separate administrative duty to provide [a DNA sample] if a person has been found guilty or was adjudicated a ward of the court by a trier of fact of a qualifying offense . . . ." (Stats. 2015, ch. 487, §§ 4(f), 5(f).) Neither the Legislative Counsel's Digest nor section 1 of Bill No. 1492, which explains the purpose of the statute, mentions this aspect of the bill, and we have been unable to find any explanatory reference to it in the bill's legislative history.

**B.** *The Meaning of Bill No. 1492*

In determining the significance of Bill No. 1492 for this case, we begin with the meaning of the legislative decision to amend section 299(f) to add a reference to section 1170.18. The Attorney General argues the amendment is intended to prohibit trial courts, when granting a petition to recall a sentence under section 1170.18, from expunging the record of a DNA sample provided by the defendant in connection with the original felony conviction. For the reasons stated below, we agree.

Section 299(f), is part of the statute governing the expungement of DNA records. By its terms, section 299(f) prohibits a court from "reliev[ing]" a person of the "separate administrative duty to provide" a DNA sample if the person has been found guilty of an offense otherwise qualifying for DNA sampling. That language, standing alone, appears to prohibit courts only from preventing the provision of a DNA sample, rather than

prohibiting expungement of the record of a sample already provided, but the specific statutory references in section 299(f) demonstrate the latter circumstance is also covered.

Prior to the addition of section 1170.18 by Bill No. 1492, section 299(f) referred to sections 17, 1203.4, and 1203.4a. Section 17 governs "wobbler" offenses, which are offenses that can be treated as felonies or misdemeanors in the discretion of the sentencing court. (*Lynall, supra*, 233 Cal.App.4th 1102, 1108.) Subdivision (b) of section 17 dictates "when" a wobbler is treated as a misdemeanor, including after a defendant has been sentenced to a punishment other than prison (*id.*, subd. (b)(1)), when a court declares a wobbler a misdemeanor upon granting probation (*id.*, subd. (b)(3)), and when the prosecutor designates the crime as such in a charging document (*id.*, subd. (b)(5)). In addition, under subdivision (c) of section 17, if a juvenile is committed to the Division of Juvenile Justice on the basis of a wobbler conviction, the violation is "thereafter . . . deemed a misdemeanor for all purposes" following his or her discharge.[6]

---

[6] Section 17, subdivisions (b) and (c) state as follows:

"(b) When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances:

"(1) After a judgment imposing a punishment other than imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170.

"(2) When the court, upon committing the defendant to the Division of Juvenile Justice, designates the offense to be a misdemeanor.

"(3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor.

"(4) When the prosecuting attorney files in a court having jurisdiction over misdemeanor offenses a complaint specifying that the offense is a misdemeanor, unless the defendant at the time of his or her arraignment or plea objects to the offense being made a misdemeanor, in which event the complaint shall be amended to charge the felony and the case shall proceed on the felony complaint.

"(5) When, at or before the preliminary examination or prior to filing an order pursuant to Section 872, the magistrate determines that the offense is a misdemeanor, in

8

Sections 1203.4 and 1203.4a govern the dismissal of charges following a successful completion of probation. (See, e.g., *Doe v. Harris* (2013) 57 Cal.4th 64, 72–73.) These statutes have one thing in common. Their application generally results in the reduction of a felony conviction suffered by a defendant to something less serious—either a misdemeanor under section 17 or, in the case of sections 1203.4 and 1203.4a, dismissal altogether. The felony conviction necessarily required provision of a DNA sample, but the defendant would not have been required to provide a sample had the conviction been designated a misdemeanor from the outset or if there had been no criminal charges at all. The unmistakable implication of the reference to these statutes in section 299(f) is that the section was intended to prohibit trial courts, when reducing or dismissing charges pursuant to the listed statutes, from also expunging the DNA record given in connection with the original felony conviction.

This interpretation of section 299(f) was adopted in *Coffey*, *supra*, 129 Cal.App.4th 809. The defendant in *Coffey* pleaded guilty to a felony conviction for a wobbler offense, on the understanding the conviction would be reduced to a misdemeanor at sentencing if he satisfied certain conditions. (*Id.* at p. 812.) When the conviction was later reduced to a misdemeanor, as agreed, the trial court declined to expunge the defendant's DNA record. (*Id.* at p. 813.) In affirming the denial, the *Coffey* court based its decision on the language of section 296, but it found its conclusion bolstered by the language of section 299(f). (*Coffey*, at pp. 821–823).

As *Coffey* explained, section 296 requires any person "convicted" of a qualifying offense to provide a DNA sample. (*Coffey*, *supra*, 129 Cal.App.4th at p. 817.) Since at

---

which event the case shall proceed as if the defendant had been arraigned on a misdemeanor complaint.

"(c) When a defendant is committed to the Division of Juvenile Justice for a crime punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail not exceeding one year, the offense shall, upon the discharge of the defendant from the Division of Juvenile Justice, thereafter be deemed a misdemeanor for all purposes."

9

least 1925, a conviction under a wobbler offense charged as a felony has been considered to be a felony until that status is changed by the trial court through sentencing (*id.* at p. 820), and the later reduction to a misdemeanor does not retroactively eliminate the original felony conviction. (See *Doble v. Superior Court* (1925) 197 Cal. 556, 576–577 (*Doble*) ["the charge stands as a felony for every purpose up to judgment, . . . but if the judgment is for a misdemeanor it is deemed a misdemeanor for all purposes thereafter"].) The *Coffey* court found that concept reflected in the language of section 296, which requires "that 'Any person who is convicted of any of the following crimes . . . shall, *regardless of sentence imposed or disposition rendered*, be required to provide [DNA samples].' " (*Coffey*, at p. 821, italics added by *Coffey*.) As the court concluded, "Because the Legislature did not intend for the defendant's sentence or disposition to [a]ffect whether the DNA samples would be collected, it likely intended the term 'conviction' [in section 296] to refer to a guilty plea rather than the ultimate judgment rendered after application of section 17." (*Ibid.*)

Subdivision (f) was added to section 299 by proposition after the date of the *Coffey* defendant's offense.[7] As the court noted, the amendment "confirm[s] that a reduction in a charge pursuant to section 17 does not obviate the defendant's obligation to provide DNA samples." (*Coffey, supra,* 129 Cal.App.4th at p. 821.) Rather than effecting a change in the law, *Coffey* concluded the addition of section 299(f) "merely clarified existing law" that a defendant is not entitled to expungement of a DNA record when a wobbler conviction is reduced to a misdemeanor. (*Coffey*, at p. 822.)

Given this background, the meaning of the Legislature's inclusion of section 1170.18 in section 299(f) is clear. The original inclusion of a reference to section 17 in section 299(f) prohibited the expungement of a DNA record after a defendant's wobbler felony conviction is reduced to a misdemeanor pursuant to section 17. By the same logic, by inserting a reference to section 1170.18 in

---

[7] Section 299(f) was added as part of Proposition 69, enacted in 2004. (*Coffey, supra*, 129 Cal.App.4th at p. 821.)

section 299(f), the Legislature has prohibited the expungement of a defendant's DNA record when his or her felony offense is reduced to a misdemeanor pursuant to section 1170.18.

The minor argues section 299(f) could not have been intended to affect a court's duty to order expungement under section 299, subdivision (b) because section 299(f) speaks of "reliev[ing]" a defendant of the "duty to provide" a DNA sample, language that, as the minor argues, "applies to a situation where a person has yet to submit a sample." As explained above, while we might agree in the absence of the statutory references to sections 17, 1203.4, and 1203.4a, the inclusion of those statutes makes sense only if section 299(f) is interpreted as precluding expungement when an originally qualifying offense is reduced to a nonqualifying offense in the course of judicial proceedings. We acknowledge the use of the phrase "relieve . . . of the separate administrative duty to provide" is not an intuitive way to refer to expungement, but the language has been so understood at least since the issuance of *Coffey*, over 10 years ago.[8]

The minor also argues Bill No. 1492 was intended to deal with a possible affirmance of *Buza*, rather than to address expungement of DNA records under Proposition 47. While there is no doubt the *primary* purpose of Bill No. 1492 is to cope with *Buza*, the Legislature is permitted to address more than one issue in a single bill. The amendment of section 299(f), which remains in effect regardless of whether *Buza* is reversed or affirmed, is clearly aimed at a different issue, the one addressed here.

## C. *The Propriety of Applying Bill No. 1492 to Events Preceding Its Enactment*

For the reasons stated above, Bill No. 1492 has the effect of abrogating the holding of *Alejandro N.* by precluding the expungement of DNA records in connection

---

[8] The minor also argues the Legislature would have included the reference to section 1170.18 in section 299, subdivisions (b) or (e) if it intended to prohibit expungement, since these subdivisions expressly address, respectively, expungement and its prohibition. It is not our place to dictate to the Legislature the statutory structure. As discussed in the text, the intent of section 299(f) is clear from its language, regardless of its location within section 299, and the meaning of the insertion of section 1170.18 in section 299(f) is unambiguous.

11

with sentence recall under section 1170.18.  The question remains, however, whether the bill applies to the minor's request for expungement, since her request and the reduction of her violation to a misdemeanor occurred well before the effective date of Bill No. 1492.  Because Proposition 47 is ambiguous in its treatment of expungement, we conclude Bill No. 1492 must be understood to have clarified, rather than changed, the law.  The bill therefore may be applied to circumstances predating its enactment.

### 1.  Governing Law

The "general rule" is statutes "do not operate retroactively 'unless the Legislature plainly intended them to do so.' " (*In re Marriage of Fellows* (2006) 39 Cal.4th 179, 183, fn. omitted.)  This general rule, however, rests on a particular definition of the term "retroactive."  In common parlance, "retroactive" can be understood to refer generically to a statute's application to circumstances arising prior to its effective date.  In the law, however, a statute does not operate retroactively unless, when applied to preexisting circumstances, it alters the legal effect of those circumstances.  (E.g., *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 839 (*Myers*) ["a statute that operates to 'increase a party's liability for past conduct' is retroactive"].)  For that reason, the application of a statute to events predating its enactment, while it might seem "retroactive" in the common use of the term, does not constitute a retroactive application under the law unless it changes the legal consequences of those events.

As explained in *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232 (*Western Security*):  "A statute has retrospective effect when it substantially changes the legal consequences of past events.[9]  [Citation.]  A statute does not operate retrospectively simply because its application depends on facts or conditions existing before its enactment.  [Citation.]  Of course, when the Legislature clearly intends a statute to operate retrospectively, we are obliged to carry out that intent unless due process considerations prevent us.  [Citation.]

---

[9] The Supreme Court's use of "retrospective" in *Western Security* is a possible source of confusion.  The term is used interchangeably with "retroactive."  (*Myers, supra*, 28 Cal.4th at p. 839.)

"A corollary to these rules is that a statute that merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment. We assume the Legislature amends a statute for a purpose, but that purpose need not necessarily be to change the law. [Citation.] Our consideration of the surrounding circumstances can indicate that the Legislature made material changes in statutory language in an effort only to clarify a statute's true meaning. [Citations.] Such a legislative act has no retrospective effect because the true meaning of the statute remains the same. [Citations.]

"One such circumstance is when the Legislature promptly reacts to the emergence of a novel question of statutory interpretation: ' "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . . [¶] If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change." ' " (*Western Security, supra,* 15 Cal.4th at pp. 243–244, fn. omitted.)

In *Western Security*, the Court of Appeal had interpreted a statute to excuse the failure to honor a letter of credit. Before a year had elapsed, the Legislature passed a bill abrogating the court's decision by amending four statutes. A clause in the bill stated it was the Legislature's intent to " 'confirm and clarify' " the law as it had existed prior to the Court of Appeal decision. (*Western Security, supra,* 15 Cal.4th at pp. 238, 241–242.) In deciding whether to apply the legislation in the case in which the Court of Appeal decision originally had been rendered, the Supreme Court first determined whether the statutory amendments "effected a change in the law, or instead represented a clarification of the state of the law before the Court of Appeal's decision." (*Id.* at p. 246.) After an extensive analysis of the law of letters of credit as it existed prior to the Court of Appeal decision, the Supreme Court found "the Legislature's action did not effect a change in the law." (*Id.* at p. 252.) Accordingly, the court concluded, "Because the legislative action

13

did not change the legal effect of past actions, [the legislation] does not act retrospectively; it governs [the original] case." (*Ibid.*)

The Supreme Court turned more recently to retroactivity in *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914 (*Carter*), in which the Legislature had again enacted legislation expressly to clarify the law by amending a statute to abrogate the ruling in a Court of Appeal decision. A subsequent appellate court had concluded the Legislature's amendment was not, contrary to its declaration, a clarification of the meaning of the existing statute, but rather a change in its meaning, and therefore refused to apply the new legislation to events predating its enactment. (*Id.* at pp. 919–920.) The Supreme Court began with the proposition "[a] statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its enactment." (*Id.* at p. 922.) In deciding whether the new legislation constituted a clarification of preexisting law or a change, the court examined the original statute to determine whether it "could not have been properly construed" in the manner of the purportedly clarifying legislation. (*Id.* at p. 924.) After a review, the court concluded the original statutory language was "ambiguously worded" and both parties had been able to make "credible arguments in favor of their positions." (*Id.* at p. 926.) Similarly, a review of the legislative history of the original legislation failed to establish a clear legislative intent. (*Id.* at pp. 928–930.) Given the ambiguity in the existing statute and the Legislature's prompt action to clarify that ambiguity in response to the appellate decision, the Supreme Court concluded "the Legislature merely clarified existing law" in the new legislation and the legislation could be applied to circumstances predating its enactment " 'because the true meaning of the statute remains the same.' " (*Id.* at p. 930.)

## 2. Clarification Versus Change in the Law

As discussed above, statutory amendments ordinarily may not be applied retroactively. Under *Western Security* and *Carter*, however, an amendment is not deemed to apply retroactively merely because it is applied to events predating its enactment. Rather, an impermissible retroactive application occurs only if the amendment is applied to conduct predating its enactment *and* that application

14

"substantially changes the legal consequences" of the earlier conduct. (*Western Security, supra,* 15 Cal.4th at pp. 238, 243.) Because the minor's violation and disposition occurred well before the effective date of Bill No. 1492, the bill cannot be applied to her circumstances unless such an application would not be "retroactive"—that is, would not effect a change in the legal consequences of her conduct, but would act merely to clarify the preexisting law. We turn now to that distinction.

In evaluating the proper application of Bill No. 1492, we begin, consistent with the approach of *Western Security* and *Carter*, with an evaluation of the meaning of the original legislation to determine whether the Legislature's interpretation is a clarification of prior law or a change in its established meaning.

The case for interpreting Proposition 47 to require expungement was forcefully made by *Alejandro N.* In brief, *Alejandro N.* relied on section 1170.18, subdivision (k), which states that a felony reduced to a misdemeanor pursuant to section 1170.18 "shall be considered a misdemeanor for all purposes," with the exception that the misdemeanant continues to be subject to the firearms ban applicable to felons. The court reasoned that because subdivision (k) lists only one exception to the requirement to treat the recalled sentence as a misdemeanor for all purposes, "the enactors effectively directed the courts not to carve out other exceptions to the misdemeanor treatment of the reclassified offense." (*Alejandro N., supra*, 238 Cal.App.4th at p. 1227.) The court squared this interpretation with section 299, governing expungement, by treating the redesignated conviction as though it had been a misdemeanor conviction from the beginning. Under section 299, a person is entitled to expungement only if he or she "has no past or present offense . . . which qualifies that person for inclusion" within the DNA collection program. (§ 299, subd. (a).) By interpreting the recall of sentence as effective from the time of conviction, as *Alejandro N.* held, "the reclassified misdemeanor offense itself no longer qualifies as an offense permitting DNA collection" after the redesignation. (*Id.* at p. 1229, italics omitted.)

While this is an entirely plausible reading of the relevant statutes, a different and similarly plausible reading is available by analogy to the treatment of wobbler felony

15

convictions under section 17. As discussed above in connection with *Coffey, supra*, 129 Cal.App.4th 809, a conviction for a wobbler offense charged as a felony has traditionally been regarded as a felony until the point in time at which the trial court's sentencing decision converts it to a misdemeanor. As the court held in *Doble*, it is "deemed a misdemeanor for all purposes *thereafter*." (*Doble, supra*, 197 Cal. 556, 576–577, italics added).) *Coffey* relied on this approach in finding a person whose felony conviction has been converted to a misdemeanor at sentencing is not entitled to expungement of his or her DNA record.[10] (See, e.g., *People v. Williams* (2016) 245 Cal.App.4th 458, 466–468 [finding redesignation under Proposition 47 to operate prospectively from the date of redesignation, in part by analogy to § 17].)

If redesignation under section 1170.18 is similarly analogized to the treatment of wobbler offenses, the redesignation of a felony conviction would not justify DNA record expungement. Under section 299, subdivision (b), a person is entitled to expungement of his or her DNA record only "if the person has no past or present offense or pending charge which qualifies that person for inclusion." (§ 299, subd. (a).) If a felony conviction redesignated as a misdemeanor pursuant to section 1170.18 is treated as a felony up until the time of redesignation, similar to a wobbler felony conviction under section 17, the defendant would continue to have a past qualifying conviction even after the redesignation. Under the terms of section 299, the defendant would not be entitled to expungement of his or her DNA record.

While there are solid arguments both for and against the approach of *Alejandro N.* and the analogy to section 17, none of these arguments is conclusive. Because

---

[10] A similar analogy to section 17 was adopted by *People v. Rivera* (2015) 233 Cal.App.4th 1085, to support its conclusion that the Court of Appeal retained jurisdiction over an appeal filed with respect to a felony conviction after the conviction had been reduced to a misdemeanor pursuant to a section 1170.18 petition for recall of sentence. (*Rivera*, at pp. 1094–1096.) As *Rivera* concluded, "Since . . . we look at how the offense was charged to determine appellate jurisdiction, the later designation of the offense as a misdemeanor under Proposition 47 does not apply retroactively to convert this case from a felony case to a misdemeanor case for the purpose of determining which court has jurisdiction over the appeal." (*Id.* at pp. 1096–1097.)

section 1170.18 does not make clear whether a redesignated conviction is to be treated as a misdemeanor from the date of conviction, as *Alejandro N.* concluded, or from the date of sentence recall, as would be dictated by analogy to section 17, Proposition 47 is ambiguous in this regard. Further, there are, as the Supreme Court observed in *Carter*, "credible arguments in favor of [both] positions." (*Carter, supra,* 38 Cal.4th at p. 926.) Accordingly, Bill No. 1492 must be regarded as clarifying, rather than changing, Proposition 47, and it can be applied to preexisting circumstances without changing the then-existing legal relations.

### 3. The Legislature's Intent

That conclusion does not quite end our inquiry. As noted above, in both *Western Security* and *Carter* the Legislature had expressly stated its intent in the amending legislation to clarify the statutory interpretation and abrogate the contrary holding of the Court of Appeal. The circumstances are somewhat different here. While Bill No. 1492 was issued soon after *Alejandro N.* and had the unmistakable effect of abrogating its statutory interpretation, there is no declaration of that intent in the legislation. Nor did the legislation claim to clarify Proposition 47. Further, it is clear from the legislative history that the portion of Bill No. 1492 amending section 299(f), was not enacted in reaction to *Alejandro N.*, despite the coincidental timing. While the legislative history of Bill No. 1492 is a bit tangled, it is clear the portion of Bill No. 1492 inserting a reference to section 1170.18 into section 299(f) was included in the legislation no later than June 2015, thereby predating the issuance of *Alejandro N.* by at least a month.[11]

---

[11] As first introduced in February 2015, Bill No. 1492 was addressed to matters of insurance. (<http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201520160AB1492> [as of Apr. 28, 2016].) In June 2015, the original content of the bill was deleted, and an entirely different text was substituted, similar to that of the final bill. (<http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201520160AB1492> [as of Apr. 28, 2016].) The text substituted into Bill No. 1492 in June 2015 contained the amendment to section 299(f) at issue here. That substituted text appears to have been drawn from another bill, Assembly Bill No. 84 (2015–2016 Reg. Sess.), which was never enacted. The last version of Assembly Bill No. 84 (2015–2016 Reg. Sess.), from April

17

Nonetheless, there is some evidence the Legislature viewed the amendment of section 299(f) in Bill No. 1492 to be a clarification of the meaning of Proposition 47. The provision amending section 299(f) in Bill No. 1492 was also contained in a different, unsuccessful bill, Assembly Bill No. 390 (2015–2016 Reg. Sess.) (hereafter Assembly Bill 390), which was pending before the same Senate committee at the same time as Bill No. 1492.[12]  The primary purpose of Assembly Bill 390 was to amend section 296 to require the collection of DNA samples from persons convicted of the crimes that Proposition 47 had changed from wobblers to misdemeanors.  In July 2015, Assembly Bill 390 was amended to include the insertion of a reference to section 1170.18 into section 299(f), the same amendment at issue here. (<http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201520160AB390> [as of Apr. 28, 2016].)  A memorandum prepared for the Senate Committee on Public Safety upon consideration of this amended version of Assembly Bill 390 states:  "This bill provides that even if a person is resentenced under [Proposition 47], a court could not relieve their duty to give a DNA sample and thus the person could not seek to have his or her DNA removed from the data bank."[13]  (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 390 (2015–2016 Reg. Sess.) July 13, 2015, p. 8.)  Although the legislative history of Bill No. 1492 does not similarly address this aspect of the bill, it does contain references to the concurrent pendency of Assembly Bill 390.  (Sen. Com. on

_____

2015, while it addresses *Buza*, does not contain an amendment of section 299(f). (<http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201520160AB84> [as of Apr. 28, 2016].)  The amendment of section 299(f) was therefore formulated sometime between April 2015 and June 2015, well prior to the issuance of *Alejandro N*.

[12] Assembly Bill 390 failed a vote in the Senate Committee on Public Safety in July 2015 and has not been considered since. (<http://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=201520160AB390> [as of Apr. 28, 2016].)

[13] The quotation is from a paragraph entitled, "Can't Have DNA Removed if Felony is Now a Misdemeanor."  A copy of the memorandum can be downloaded at <http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160AB390> (as of Apr. 28, 2016).

Public Safety, Analysis of Assem. Bill No. 1492 (2015–2016 Reg. Sess.), July 13, 2015, p. 10.)[14]  Accordingly, while there is no indication the Legislature was aware of *Alejandro N.*'s statutory interpretation at the time Bill No. 1492 was passed, members of the Legislature had already recognized the possibility of such an interpretation and were attempting to preclude it by amending section 299(f).  Bill No. 1492 enacted that amendment.

In deciding whether this is sufficient to support the application of Bill No. 1492 to the minor's circumstances, we are guided by this general principle from *Carter*:  "A statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its enactment."  (*Carter, supra*, 38 Cal.4th at p. 922.)  The same principle appears to be established in *Western Security*, in which the court concluded, "Because the legislative action did not change the legal effect of past actions, [it] does not act retrospectively; it governs this case."  (*Western Security, supra*, 15 Cal.4th at p. 252.)  Such language suggests that if legislation clarifies the law rather than changes it, the clarification applies to circumstances predating the time of the legislative enactment, regardless of whether the Legislature affirmatively expressed its intent regarding clarification.  (See similarly *Negrette v. California State Lottery Com.* (1994) 21 Cal.App.4th 1739, 1744 ["An amendment which merely clarifies existing law may be given retroactive effect even without an expression of legislative intent for retroactivity."].)  For the reasons discussed above, we have determined that Bill No. 1492 merely clarified, rather than changed, Proposition 47.  Under the guidance of *Carter* and *Western Security*, the fact of clarification is, standing alone, sufficient to support the application of the amended terms of section 299(f) in this case.

Two other grounds support our conclusion.  First, as noted above, the same provision in Assembly Bill No. 390 was interpreted upon presentation to the Senate Committee on Public Safety as clarifying the law in exactly this manner.  While of

---

[14] A copy of this memorandum can be downloaded at <http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160AB1492> (as of Apr. 28, 2016).

19

limited value as legislative history, this does demonstrate the identical understanding by some legislators of the effect of amending section 299(f).  Second, a refusal to apply Bill No. 1492 to pending cases would severely limit its effectiveness.  Proposition 47 was enacted in November 2014.  Because a recall of sentence under section 1170.18, subdivision (a) provided immediate sentence relief for those affected, most petitions for recall were presumably filed soon after the proposition was passed and have long since been resolved.  For that reason, most situations affected by the amendment of section 299(f) in Bill No. 1492 would, as a practical matter, be beyond its reach if the bill is denied application to petitions for recall of sentence made prior to its enactment.

### 4.  Inconsistency with Proposition 47

As final matter, the minor argues Bill No. 1492 is not a proper amendment of Proposition 47 because, by its express terms, Proposition 47 can only be amended in a manner "consistent with and [in] further[ance of]" its intent.  (Ballot Pamphlet, *supra*, text of Prop. 47, § 15, p. 74.)  In *People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, the Supreme Court adopted a relatively strict rule for determining whether a legislative enactment amends the terms of a proposition.  "In deciding whether this particular provision amends [the proposition], we simply need to ask whether it prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*Id.* at p. 571.)  Because, as explained above, Proposition 47 neither requires nor prohibits the expungement of DNA records, Bill No. 1492 does not, as so defined, amend the proposition.

Yet even if we treated Bill No. 1492 as an amendment, rather than a clarification, of Proposition 47, it would satisfy the proposition's requirement that any amendment be consistent with and further its intent.  The minor's claim of inconsistency is premised on the argument that the language of Proposition 47 requires expungement of DNA records when a felony conviction is redesignated a misdemeanor, for the reasons articulated by *Alejandro N.*  Given this reading, the prohibition on expungement in Bill No. 1492 would be inconsistent with the proposition.  As discussed above, however, while we do not reject the rationale of *Alejandro N.*, there is an alternative and equally plausible reading

20

of the language of Proposition 47 under which expungement would be prohibited. Because we conclude Proposition 47 does not clearly either require or prohibit expungement the records of previously provided DNA samples, there is no basis for finding the prohibition of expungement in Bill No. 1492 to be inconsistent with the intent of the proposition.[15]

## III. DISPOSITION

The judgment of the trial court is affirmed.

_____

Margulies, J.

We concur:

_____

Humes, P.J.

_____

Banke, J.

---

[15] Proposition 47 also requires a two-thirds vote of both houses of the Legislature for its amendment. (Ballot Pamphlet, *supra*, text of Prop. 47, § 15, p. 74.) The bill history demonstrates Bill No. 1492 was passed unanimously in the Senate and over a single dissenting vote in the Assembly, easily satisfying the two-thirds majority requirement. The bill history can be found at <http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201520160AB1492> (as of Apr. 28, 2016).

Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. Thomas M. Maddock

Counsel:

Melanie Martin del Campo, under appointment by the Court of Appeal, for Defendant
and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Jeffrey M. Laurence,
Assistant Attorneys General, Eric D. Share and Huy T. Luong, Deputy Attorneys General
for Plaintiff and Respondent.