Filed 8/30/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>C.H.,<br><br>        Defendant and Appellant. | A146120<br><br>(Contra Costa County<br>Super. Ct. No. J11-00679) |

C.H. argues that following the reduction of his 2011 felony to a misdemeanor, the trial court was obligated to expunge a DNA sample he originally provided pursuant to Penal Code section 296.1.[1] His argument is premised upon his interpretation of Proposition 47, the Safe Neighborhoods and Schools Act, enacted by the voters in 2014. Proposition 47 permitted C.H. to petition the court to redesignate his felony as a misdemeanor, and provides that once redesignated his crime is a misdemeanor "for all purposes." (§ 1170.18, subdivision (k).) Because misdemeanants are not required by law to provide a DNA sample for the state database, C.H. says his existing sample should be expunged because he is no longer a felon. We disagree.

Proposition 47's directive to treat a redesignated offense as a misdemeanor "for all purposes" employs words that have a well-defined meaning and have never applied to alter a crime's original status. The provisions of Proposition 47 can be harmonized with

---

[1] All further statutory references are to the Penal Code.

our state's DNA collection law, Proposition 69, giving effect to each measure.[2] Moreover, if there is any fatal conflict between the text of the two measures, Proposition 69 controls because it is the more specific law. Finally, our interpretation gives effect to an underlying purpose of both measures to protect public safety. For these reasons, we affirm.

BACKGROUND

C.H. was arrested in early 2011 following his participation in a physical altercation with a loss prevention officer at Kohl's Department Store who tried to detain him and one of his friends for shoplifting. C.H. successfully made off with a $46 pair of jeans. He was charged with second degree robbery and assault with force likely to cause great bodily injury. The robbery and assault charges were dismissed after C.H. admitted a felony violation of section 487, subdivision (c), grand theft from a person.

At the 2014 general election, voters passed Proposition 47, the Safe Neighborhoods and Schools Act. (Statement of Vote (Nov. 4, 2014) <http://elections.cdn.sos.ca.gov/sov/2014-general/pdf/2014-complete-sov.pdf> [as of Aug. 30, 2016].) One of its provisions, section 1170.18, permits offenders adjudicated of felony grand theft to petition the court for redesignation of their crimes as misdemeanors. C.H. sought redesignation pursuant to section 1170.18, subdivision (f), and also expungement of his DNA records.[3] The court redesignated C.H.'s felony as a misdemeanor but denied his request to expunge his DNA sample. C.H. appeals that denial.

---

[2] Proposition 69 is the DNA Fingerprint, Unsolved Crime and Innocence Protection Act passed by the voters in the 2004 general election. It is codified in Part 1, Title 9, Chapter 6 of the Penal Code, sections 295 through 302.2.

[3] Appellant's request for judicial notice is granted.

2

DISCUSSION

*A. Statutory Analysis*

This case requires us to interpret and apply section 1170.18, part of Proposition 47, which allows offenders who have completed their sentence for certain felonies to apply to the court for designation of those felonies as misdemeanors. (§1170.18 subds. (a), (b) & (f).) Once an offense is designated a misdemeanor, section 1170.18 subdivision (k) requires that the crime "shall be considered a misdemeanor for all purposes" except for the prohibition on ownership of a firearm that applies to felons and offenders convicted of specified misdemeanors. C.H. argues that because only felons and certain misdemeanor sex offenders are required by law to provide DNA under section 296, his DNA sample must be expunged and his profile removed from the state database because his redesignated crime is to "be considered a misdemeanor for all purposes." Because the Penal Code provides a specific scheme for obtaining and expunging DNA, to address this argument we must consider whether section 1170.18 clearly specifies what must happen to an offender's DNA sample and profile when a felony is reduced to a misdemeanor.

The principles for interpreting a proposition enacted by popular vote are the same as those used to interpret a statute enacted by our Legislature. (*People v. Park* (2013) 56 Cal.4th 782, 796 (*Park* ).) "Initially, '[a]s in any case of statutory interpretation, our task is to determine afresh the intent of the Legislature by construing in context the language of the statute.' [Citation] In determining such intent, we begin with the language of the statute itself. [Citation] That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning. [Citation] 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." ' [Citation] 'But when the statutory language is ambiguous, "the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes." ' " (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192– 193.)

3

All of Proposition 47, including section 1170.18, is silent on whether the redesignation of a felony as a misdemeanor requires that a defendant's DNA be expunged. C.H. asserts the phrase "shall be considered a misdemeanor for all purposes" in section 1170.18, subdivision (k) compels the conclusion that it does. We disagree, and for several reasons, conclude that redesignation of an offense as a misdemeanor has no effect on previously obtained DNA.

First of all, the phrase "a misdemeanor for all purposes" has a well-defined meaning that does not relate back to alter a crime's original status for events occurring before the crime was reduced to a misdemeanor. This language is identical to the language used in section 17 to describe the effect of a judicial declaration that a wobbler offense—which is punishable as a felony until designated a misdemeanor—is to be considered a misdemeanor. (§ 17, subd. (b)(3) [where a crime is a wobbler, "it is a *misdemeanor for all purposes* . . . when . . . the court declares the offense to be a misdemeanor"], italics added; see also *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1100, (*Rivera*) [noting how Proposition 47 borrowed section 17's language].)

"[W]hen a wobbler is reduced to a misdemeanor [under section 17], the offense *thereafter* is deemed a 'misdemeanor for all purposes.' " (*Park, supra,* 56 Cal.4th at p. 795, italics added; *People v. Banks* (1959) 53 Cal.2d 370, 381–382; *People v. Pryor* (1936) 17 Cal.App.2d 147, 152.) Put differently, redesignation under section 17 makes the wobbler "a misdemeanor from that point on." (*People v. Feyrer* (2010) 48 Cal.4th 426, 439, 442, fn. 8 (*Feyrer*); *People v. Marshall* (1991) 227 Cal.App.3d 502, 504 [redesignated offense is treated as a misdemeanor *after* redesignation]; *Gebremicael v. California Com'n on Teacher Credentialing* (2004) 118 Cal.App.4th 1477, 1482–1483, 1487 [same]; *People v. Camarillo* (2000) 84 Cal.App.4th 1386, 1390, 1394 [same]; *People v. Rowland* (1937) 19 Cal.App.2d 540, 541–542 [same].) Critically, however, this "misdemean[or] status [is] not . . . given retroactive effect." (*People v. Moomey* (2011) 194 Cal.App.4th 850, 857 (*Moomey*); *Feyrer,* at p. 439 ["the offense is [made] a misdemeanor from that point on, *but not retroactively*," italics added].)

In other words, a court's declaration of misdemeanor status renders an offense a

4

misdemeanor *for all purposes,* not *at all times*. Thus, a declaration that a wobbler is a misdemeanor does not "relate back" and alter that offense's original status as a wobbler that is by definition to be treated as a felony until declared otherwise. For this reason, a court's order declaring a wobbler to be a misdemeanor does not call into question a defendant's burglary conviction for entering a building with intent to commit a felony (*Moomey, supra*, 194 Cal.App.4th at pp. 857–858), a defendant's ineligibility for a diversionary drug sentence due to a prior felony (*People v. Marsh* (1982) 132 Cal.App.3d 809, 812–813), a defendant's conviction for being a felon in possession of a firearm (*People v. Holzer* (1972) 25 Cal.App.3d 456, 460, overruled on other grounds in *People v. Palmer* (2001) 24 Cal.4th 856, 860–862), or the imposition of a sentencing enhancement for a prior felony (See *Park, supra*, 56 Cal.4th at p. 802 ["(t)here is no dispute that . . . defendant would be subject to the section 667(a) enhancement [for 'serious' felonies] had he committed and been convicted of the present crimes before the court reduced the earlier offense to a misdemeanor"].)

" 'It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts.' " (*California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1424, *citing City of Long Beach v. Payne* (1935) 3 Cal.2d 184, 191.) Because "identical language appearing in separate statutory provisions should receive the same interpretation when the statutes cover the same or an analogous subject matter" (*People v. Cornett* (2012) 53 Cal.4th 1261, 1269, fn. 6; *People v. Lamas* (2007) 42 Cal.4th 516, 525), and because Proposition 47 and section 17 both address the effect to be given the redesignation of a felony (or a wobbler that starts out as a felony) as a misdemeanor, we are presumptively obligated to construe the phrase "misdemeanor for all purposes" under Proposition 47 to mean the same as it does under section 17— namely, that a felony offense redesignated as a misdemeanor under Proposition 47 retains its character as a felony prior to its redesignation, and is treated as a misdemeanor only

after the time of redesignation. This is precisely why the appeal of a redesignated offense under Proposition 47 lies with the Court of Appeal and not the Appellate Division—namely, because the redesignation does not retroactively convert the offense to a misdemeanor at the time of charging, which is the relevant point in time for determining where an appeal lies. (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1110–1111; *Rivera, supra,* 233 Cal.App.4th at pp. 1096–1097, 1099–1100.)

Our conclusion is also influenced by Proposition 69, the DNA Fingerprint, Unsolved Crime and Innocence Protection Act. In section 296, subdivision (a)(1), Proposition 69 requires that "[a]ny person, including any juvenile, who is convicted of or pleads guilty or no contest to any felony offense, . . . or any juvenile who is adjudicated under Section 602 of the Welfare and Institutions Code for committing any felony offense" is to provide fingerprints and samples of bodily fluids for DNA profiling purposes. Thus, the triggering event for the obligation to provide a sample for the state's DNA database is a conviction or plea. For this reason we disagree with any notion that an application for expungement filed under section 1170.18 is seeking only prospective relief. Because the obligation to contribute DNA arises from a conviction or plea, the substance of an application for expungement under section 1170.18 must be predicated on the theory that redesignation as a misdemeanor relates back to change the nature of a previous plea or felony conviction *when it occurred*. But that, as explained above, is not the law.

Proposition 69 also specifies the circumstances under which DNA obtained for the database may be expunged. Section 299, subdivision (a)(1) allows expungement when "the person has no past or present offense or pending charge which qualifies that person for inclusion." C.H. argues that, since there is no obligation on misdemeanants other than sex offenders to contribute to the DNA database, his sample should be expunged. But section 299, subdivision (b) permits persons who have "no past or present qualifying offense" to request expungement only if: following arrest no accusatory pleading is filed for prosecution; a qualifying charge is dismissed prior to adjudication; the qualifying conviction has been reversed and the case dismissed; the defendant has been found

6

factually innocent; or the defendant has been found not guilty or acquitted of the qualifying offense.  (§ 299 subd. (b)(1)-(4).)  This case does not fall within any of those circumstances.

Moreover, under Proposition 69 offenders may not be relieved of the obligation to provide a sample because the qualifying charge has been reduced under some other law. Section 299 subdivision (f) provides: "Notwithstanding any other law, including Sections 17, 1170.18, 1203.4, and 1203.4a, a judge is not authorized to relieve a person of the separate administrative duty to provide specimens, samples, or print impressions required by this chapter if a person has been found guilty or was adjudicated a ward of the court by a trier of fact of a qualifying offense as defined in subdivision (a) of Section 296, . . . or pleads no contest to a qualifying offense as defined in subdivision (a) of Section 296."[4]

Thus, the specific provisions of Proposition 69 provide that an offender is obligated to provide a DNA specimen as a result of a conviction, guilty plea or no contest plea to a felony or a specified misdemeanor, specify the grounds upon which expungement is permissible; and provide that offenders are not to be relieved of the obligation to provide DNA because a felony is later reduced to a misdemeanor.  In light of this specific statutory scheme it seems odd at best to conclude that Proposition 47's general directive that a redesignated felony is "a misdemeanor for all purposes" compels expungement of DNA originally obtained as a result of a qualifying conviction or plea.[5]

To the extent there is any possible tension between section 1170.18 and sections 296 and 299, our job is to harmonize them where reasonably possible, reconciling

---

[4] Section 299 was recently amended to add section 1170.18 to the list of statutory offense reduction mechanisms that do not relieve an offender of the obligation to provide DNA.  In our view, because section 299, subdivision (f) at all times specified it is to be given effect "notwithstanding any other law," it is unnecessary to consider whether this recent amendment to Proposition 69 is a change or clarification of existing law, or is somehow impermissibly retroactive in operation.

[5] We do not suggest that section 299 provides the exclusive basis to expunge DNA from the database.  Obviously, in an appropriate case constitutional concerns may compel such a result.  (c.f. *Coffey v. Superior Court* (2005) 129 Cal.App.4th 809, 817. )

inconsistencies and construing them to give force and effect to all of their provisions. (*State Department of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 955–956.) Our conclusion today does just that. Section 1170.18 redesignates C.H.'s felony to be a misdemeanor for all future purposes, while at the same time giving force to the mandates of sections 296 and 299 that provide offenders must contribute DNA to the state database upon conviction or plea and set forth the statutory basis for expungement.

But even if sections 1170.18 and 296 and 299 could not be reconciled in this way, we would read Proposition 69's specific provisions to take precedence over Proposition 47's general mandate that a redesignated crime is "a misdemeanor for all purposes." (§ 1170.18, subd. (k).) "The rules we must apply when faced with two irreconcilable statutes are well established. 'If conflicting statutes cannot be reconciled, later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones [citation].' [Citation] But when these two rules are in conflict, the rule that specific provisions take precedence over more general ones trumps the rule that later-enacted statutes have precedence. (See *People v. Gilbert* (1969) 1 Cal.3d 475, 479 [' "It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment." ']; see *Nunes Turfgrass, Inc. v. Vaughan–Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1539 [same]; see also Code Civ. Proc., § 1859 ['when a general and particular provision are inconsistent, the latter is paramount to the former'].)" (*State Department of Public Health v. Superior Court, supra*, 60 Cal.4th at pp. 960–961.) Thus, as the more specific laws addressing DNA collection and expungement, sections 296 and 299 trump section 1170.18 even though section1170.18 is the later-enacted statute.

This result is also faithful to the public policy and purposes expressed in and supporting both initiative measures. Proposition 47 was declared by the voters to "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent

8

or serious crimes." (Voter Information Pamp., Gen. Elec. (Nov. 4, 2014) Text of Prop. 47, p. 70 <http://vig.cdn.sos.ca.gov/2014/general/en/pdf/complete-vigr1.pdf> [as of Aug. 30, 2016].) It "[a]uthorize[s] consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors," and makes clear that criminals convicted of violent crimes are not to benefit from its terms. (*Ibid.*) Moreover, the right to resentencing under Proposition 47 is qualified and "[r]equire[s] a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety." (*Ibid.*) So, although it permits redesignation of certain felonies as misdemeanors, Proposition 47 intends to do so in a way that does not "pose a risk to public safety." But Proposition 47 includes no indication that it was also intended to affect the administrative requirements attendant to a felony conviction. (See *Good v. Superior Court* (2008) 158 Cal.App.4th 1494, 1510–1511 [DNA sample collection is an administrative requirement not punishment].) Indeed, such a construction would be difficult to reconcile with Proposition 47's aim to promote public safety while also reducing punishment for less serious offenses.

Proposition 69 is, if anything, even more facially motivated by concerns for public safety. It was enacted in recognition of a "critical and urgent need to provide law enforcement officers and agencies with the latest scientific technology available for accurately and expeditiously identifying, apprehending, arresting, and convicting criminal offenders and exonerating persons wrongly suspected or accused of crime." (Voter Information Pamp., Gen. Elec. (Nov. 2, 2004) Text of Prop. 69, p. 135 <http://vig.cdn.sos.ca.gov/2004/general/english.pdf> [as of Aug. 30, 2016].) Expanding the state's DNA database program was considered "the most reasonable and certain means to accomplish effective crime solving in California, to aid in the identification of missing and unidentified persons, and to exonerate persons wrongly suspected or accused of crime." (*Ibid.*) To that end, the voters did not intend to limit the collection of DNA to only offenders convicted of violent crimes. "The most reasonable and certain means to solve crime as effectively as other states which have found that the majority of violent

9

criminals have nonviolent criminal prior convictions, and that the majority of cold hits and criminal investigation links are missed if a DNA data base or data bank is limited only to violent crimes." (*Ibid.*)

Thus, a concern of the voters in passing both Propositions 47 and 69 was the preservation and protection of public safety. Proposition 69 sought to enhance public safety by including within its scope non-violent crimes. On the other hand, there is no expressed intent of the voters in Proposition 47 to limit or relieve felonies reclassified as misdemeanors from the obligation to contribute DNA, and that is no surprise; to do so would be inconsistent with the expressed policy objective in both measures to protect public safety.

For the foregoing reasons, we agree with the holding of our colleagues in Division One in *In re J.C.* (2016) 246 Cal.App.4th 1462, and respectfully disagree with the courts who have held that redesignation of a felony as a misdemeanor under section 1170.18 requires expungement of an offender's DNA and profile from the state database. (See *Alejandro N. v. Superior Court* (2015) 238 Cal.App.4th 1209.) Redesignation of a felony to a misdemeanor under section 1170.18 does not require expungement.[6]

B. Equal Protection

C.H. also argues that retention of his DNA and profile in the state database following the passage of Proposition 47 violates his right to equal protection under law prescribed in the state and federal constitutions. (Cal. Const., Art. I, § 7, subd. (a); U.S. Const., 14th Amend.) He argues that if Proposition 47 were in effect when he committed his crime, he would be under no obligation to submit a DNA sample. Thus, removal of his DNA from the state database is necessary as a matter of equal protection so he will be treated similarly to an offender who commits a crime after the initiative's enactment. We disagree. Retaining C.H.'s DNA and profile in the state database does not violate his rights to equal protection.

---

[6] In light of our interpretation of these statutes, we need not address C.H.'s contention that AB 1492 effected an unconstitutional amendment of Proposition 47.

10

"Where, as here, a disputed statutory disparity implicates no suspect class or fundamental right, 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881(*Johnson*).) " 'The concept [of equal protection] recognizes that persons similarly situated with respect to the legitimate purpose of the law receive like treatment, but it does not . . . require absolute equality. [Citations.] Accordingly, a state may provide for differences as long as the result does not amount to invidious discrimination. [Citations.]' [Citation] 'Equal protection . . . require[s] that a distinction made have some relevance to the purpose for which the classification is made.' " (*People v. Cruz* (2012) 207 Cal. App.4th 664, 675.)

There is a rational basis supporting the retention of DNA obtained from offenders convicted of felonies before Proposition 47 whose crimes have been reduced to misdemeanors. Proposition 69 declares that an expansive DNA database is: "(1) The most reasonable and certain means to accomplish effective crime solving in California, to aid in the identification of missing and unidentified persons, and to exonerate persons wrongly suspected or accused of crime; [¶] (2) The most reasonable and certain means to solve crime as effectively as other states which have found that the majority of violent criminals have nonviolent criminal prior convictions, and that the majority of cold hits and criminal investigation links are missed if a DNA data base or data bank is limited only to violent crimes; [¶] (3) The most reasonable and certain means to rapidly and substantially increase the number of cold hits and criminal investigation links so that serial crime offenders may be identified, apprehended and convicted for crimes they committed in the past and prevented from committing future crimes that would jeopardize public safety and devastate lives; and [¶] (4) The most reasonable and certain means to ensure that California's Database and Data Bank Program is fully compatible with, and a meaningful part of, the nationwide Combined DNA Index System (CODIS)." (Voter Information Pamp., Gen. Elec. (Nov. 2, 2004) Text of Prop. 69, p. 135 <http://vig.cdn.sos.ca.gov/2004/general/english.pdf> [as of Aug. 30, 2016].) Preserving

the integrity and vitality of the state's DNA database system provides a rational basis to retain the DNA and profiles of offenders who were convicted before enactment of proposition 47, even if they would not be required to provide DNA if convicted after its effective date.  It is reasonable to conclude that a more comprehensive database, with samples from more offenders, is a more effective and utilitarian database.

"To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" '  that might support the disputed statutory disparity.  (*Heller* [*v. Doe by Doe*] (1993) [509 U.S. 312,] 320; see [*People v.*] *Turnage* (2012) [55 Cal.4th 62,] 75.)  If a plausible basis exists for the disparity, courts may not second-guess its ' " 'wisdom, fairness, or logic,' " ' " and "the Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses."  ( *Johnson, supra,* 60 Cal.4th at pp. 881, 887.)

Although courts "will not condone unconstitutional variances in the statutory consequences of our criminal laws, rational basis review requires that we respect a statutory disparity supported by a reasonably conceivable state of facts.  ' " 'Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.' " ' " (*Johnson, supra*, 60 Cal.4th at p. 889.)

DISPOSITION

The order is affirmed.

12

_____
Siggins, J.

We concur:


_____
McGuiness, P.J.


_____
Jenkins, J.

*In re C.H.*, A146120

Trial Court:                                    Contra Costa County Superior Court


Trial Judge:                                    Honorable Thomas M. Maddock

Patricia Noel Cooney, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Huy T. Luong, Deputy Attorney General for Plaintiff and Respondent.