Filed 9/6/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D070711 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD249624) |
| TALEIA HARRIS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge.  Affirmed.

Randy Mize, Chief Deputy Public Defender, and Michael Begovich, Deputy Public Defender for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Sabrina Y. Lane-Erwen, Deputy Attorneys General for Plaintiff and Respondent.

In December 2013, Taleia Harris pled guilty to felony grand theft from a person for stealing a wallet from the victim's person. (Pen. Code,[1] § 487, subd. (c).) In November 2014, the voters enacted Proposition 47, the Safe Neighborhoods and Schools Act (Proposition 47) (Cal. Const., art. II, § 10, subd. (a)), which reduced certain crimes from felonies to misdemeanors and allowed a person convicted of one of those felonies before its passage to petition the court to reduce the felony conviction to a misdemeanor and be resentenced. Harris successfully petitioned to have her felony conviction reduced to a misdemeanor under Proposition 47, but the court denied her motion to expunge the DNA sample that law enforcement took by mouth swab when she was booked on her felony charge.

Harris appeals from the order denying her motion to expunge her DNA sample from the state's database. She contends that when a felony is reduced to a misdemeanor under Proposition 47, the state is not permitted to retain an adult misdemeanant's previously collected DNA sample and genetic profile, and that the state's retention of her DNA sample and genetic profile violates her state and federal constitutional right to equal protection of the laws and right of privacy. We affirm.

## DISCUSSION

Harris contends that the reduction of her felony conviction to a misdemeanor under Proposition 47 required the court to grant her motion to expunge her DNA from the

---

[1]     All statutory references are to the Penal Code unless otherwise specified.

2

state's DNA database.[2]  Harris relies primarily on *Alejandro N. v. Superior Court* (2015) 238 Cal.App.4th 1209 (*Alejandro N.*), in which this court concluded that because section 1170.18, subdivision (k), provides that a felony that is reduced to a misdemeanor under Proposition 47 "shall be considered a misdemeanor for all purposes," DNA collected in connection with the offense is properly expunged because "*the reclassified misdemeanor offense . . . no longer qualifies as an offense permitting DNA collection.*"  (*Alejandro N.*, at p. 1229, original italics.)

## I.  *Relevant Law*

### A.  Proposition 47

"The voters enacted Proposition 47 on November 4, 2014, effective the next day. [Citations.]  As summarized by the Legislative Analyst, the proposition 'reduces penalties for certain offenders convicted of nonserious and nonviolent property and drug crimes' and 'allows certain offenders who have been previously convicted of such crimes to apply for reduced sentences.' "  (*In re J.C.* (2016) 246 Cal.App.4th 1462, 1469 (*J.C.*).) Proposition 47 added section 490.2, which reclassifies grand theft violations under section 487 into misdemeanors when the value of the stolen property is $950 or less.[3]

---

2       Section 295.1, subdivision (c) provides that "[t]he DNA Laboratory of the Department of Justice shall serve as a repository for blood specimens and buccal swab and other biological samples collected, and shall analyze specimens and samples, and store, compile, correlate, compare, maintain, and use DNA and forensic identification profiles and records. . . ."  Section 295.1, subdivision (d) provides that "[t]he computerized data bank and database of the DNA Laboratory of the Department of Justice shall include files as necessary to implement this chapter."

3       Section 490.2, subdivision (a) provides:  "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the

"Proposition 47 also added section 1170.18 [citation], which provides a remedy for persons previously convicted of a felony 'who would have been guilty of a misdemeanor under [Proposition 47]' had it been in effect at the time of their offense. (§ 1170.18, subd. (a)).  Under section 1170.18, subdivision (a), a person 'currently serving a sentence' for such a conviction 'may petition for a recall of sentence' and 'request resentencing' in accordance with the statutes as amended by Proposition 47. Section 1170.18, subdivision (b) specifies the procedure for a trial court to follow upon receiving such a petition.  If the trial court finds 'the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . , unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.18, subd. (b).)

"Section 1170.18, subdivision (k) imposes only one qualification on the recall of these felony convictions:  'Any felony conviction that is recalled and resentenced under subdivision (b) . . . shall be considered a misdemeanor for all purposes, except that such resentencing shall not permit that person to own, possess, or have in his or her custody or control any firearm or prevent his or her conviction [for being a felon in possession of a firearm].' "  (*J.C., supra*, 246 Cal.App.4th at p. 1470.)

---

value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 if that person has one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290."

4

B.  DNA collection

California's DNA and Forensic Identification Database and Data Bank Act of 1998 (Database Act), section 295 et seq, "requires the collection of tissue samples for DNA analysis from all persons convicted of felonies (§§ 295, 296, subd. (a)(1)), adults arrested or charged with a felony (§ 296, subd. (a)(2)(C)), and all persons required to register as a sex or arson offender as a result of the commission of a felony or misdemeanor (*id.*, subd. (a)(3)).  Except as provided in section 296, subdivision (a)(3), persons convicted solely of misdemeanors are not required to provide DNA samples."  (*J.C., supra*, 246 Cal.App.4th at p. 1470.)  Subdivision (b) of section 296 provides that the requirements for DNA submission "shall apply to all qualifying persons regardless of sentence imposed . . . or any other disposition rendered in the case of an adult or juvenile tried as an adult. . . ."

Two months after this court issued *Alejandro N.*, the Governor signed into law Assembly Bill No. 1492 (2015–2016 Reg. Sess.) (Bill No. 1492), which amended subdivision (f) of section 299, the statute that governs expungement of DNA records from the state data bank.  (*J.C., supra*, 246 Cal.App.4th at pp. 1470, 1472.)  "Prior to the enactment of Bill No. 1492, section 299, former subdivision (f) stated: 'Notwithstanding any other provision of law, including Sections 17, 1203.4, and 1203.4a, a judge is not authorized to relieve a person of the separate administrative duty to provide [a DNA sample] if a person has been found guilty or was adjudicated a ward of the court by a trier of fact of a qualifying offense as defined in subdivision (a) of Section 296, or was found not guilty by reason of insanity or pleads no contest to a qualifying offense as defined in subdivision (a) of Section 296.' "  (*Id*. at pp. 1470–1471.)  Bill No. 1492 amended

5

subdivision (f) of section 299 by adding section 1170.18 to its express list of statutes that do not authorize a court judge to relieve a person of the administrative duty to provide a DNA sample if convicted of a qualifying offense. (*J.C.,* at p. 1472.)[4]

II. *The Court Correctly Denied Harris's Motion to Expunge Her DNA*

A. Statutory construction

Initiative measures are subject to the rules and canons of statutory interpretation (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1212), and statutory interpretation is a question of law subject to de novo review on appeal. (*Argaman v. Ratan* (1999) 73 Cal.App.4th 1173, 1176.) " 'We begin as always "with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative [or voter] intent." [Citation.] To discover that intent we first look to the words of the statute, giving them their usual and ordinary meaning. [Citations.] "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." ' " (*Ibid.*)

Proposition 47 does not mention DNA collection or expungement. Section 296 of the DNA Database Act requires "any adult person arrested or charged with any felony

_____

4    Subdivision (f) of section 299 now provides: "Notwithstanding any other law, including Sections 17, 1170.18, 1203.4, and 1203.4a, a judge is not authorized to relieve a person of the separate administrative duty to provide specimens, samples, or print impressions required by this chapter if a person has been found guilty or was adjudicated a ward of the court by a trier of fact of a qualifying offense as defined in subdivision (a) of Section 296, or was found not guilty by reason of insanity or pleads no contest to a qualifying offense as defined in subdivision (a) of Section 296."

6

offense" to provide a buccal swab DNA sample. (§ 296, subd. (a)(2)(C).) The DNA submission requirement applies "to all *qualifying* persons regardless of sentence imposed . . . or any other disposition rendered in the case of an adult or juvenile tried as an adult. . . ." (*Id.* at subd. (b), italics added.) Section 299 provides that a person is entitled to expungement of his or her DNA sample from the state DNA database "if the person *has no past* or present offense or pending charge which qualifies that person for inclusion [in the database] and there otherwise is no legal basis for retaining the specimen or sample or searchable profile." (§ 299, subd. (a), italics added.)[5] As noted, under section 299, subdivision (f), *"[n]otwithstanding any other law, including [section] . . . 1170.18,"* a court is prohibited from relieving a person of his or her DNA submission duty if the person has been found guilty of qualifying offense under section 296, subdivision (a). (§ 299, subd. (f), italics added.)

Under the plain meaning of subdivisions (b) and (f) of section 299, Harris is not entitled to DNA expungement because she has a past qualifying offense under section 296, subdivision (a)—i.e., she was convicted of an offense that qualified her for inclusion in the DNA database when her DNA sample was collected. The subsequent reclassification of her offense to a nonqualifying offense does not change the fact that at

_____

5    Section 299, subdivision (b) expressly limits the right to seek expungement to "a person who has no past or present qualifying offense" under four circumstances: (1) following arrest, no accusatory pleading has been filed charging the person with a qualifying offense or the qualifying charges have been dismissed prior to adjudication; (2) the qualifying conviction or disposition has been reversed and the case dismissed; (3) the person has been found factually innocent of the qualifying offense; or (4) the defendant has been found not guilty or acquitted of the qualifying offense. (§ 299, subd. (b)(1)-(4).

7

the time her DNA sample was taken, the taking was lawful because it was based on an offense that qualified for DNA submission. As noted in *In re C.B.* (2016) 2 Cal.App.5th 1112 (*C.B.*),[6] "the DNA sample submission requirement under the DNA Database Act does not necessarily hinge on whether a person is convicted of a felony or misdemeanor. Rather, under the relevant statutory language, the act's triggering point is when '[a]ny person, . . . is convicted of or *pleads guilty or no contest to any felony offense*.' (§ 296, subd. (a)(1), italics added.)" (*Id.* at p. 1121.)

This court in *Alejandro N.* decided that DNA collected in connection with a felony that was later reclassified as a misdemeanor under Proposition 47 is properly expunged because section 1170.18, subdivision (b) provides that such a reclassified offense "shall be considered a misdemeanor for all purposes." (*Alejandro N., supra*, 238 Cal.App.4th at pp. 1227–1229.) In arguing that DNA expungement was not required, the People in *Alejandro N.* relied on *People v. Coffey* (2005) 129 Cal.App.4th 809 (*Coffey*), in which the Court of Appeal held that reduction of a wobbler[7] from a felony to a misdemeanor at sentencing under section 17, subdivision (b),[8] did not require expungement of the

6 The California Supreme Court granted review of *C.B.* on November 9, 2016 (S237801). Under California Rules of Court, rule 8.1115(e), we may cite *C.B.* as persuasive authority while review is pending.

7 A "wobbler" is an offense that is punishable either as a felony or a misdemeanor in the discretion of the court. (See *People v. Holt* (1984) 37 Cal.3d 436, 452, fn. 7.)

8 Section 17, subdivision (b)(1), provides: "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following

8

defendant's DNA sample taken under the DNA Database Act, in part because amendments to that act by Proposition 69, which the voters passed in November 2004, confirmed "that a reduction in a charge pursuant to section 17 does not obviate the defendant's obligation to provide DNA samples." (*Coffey,* at p. 821.) Specifically, Proposition 69 amended section 299 by, among other things, adding subdivision (f) to provide that a judge was not authorized to relieve a person found guilty of a qualifying offense of the obligation to provide a DNA sample " '[n]otwithstanding any other provision of law, *including Section . . . 17 . . . .*' " (*Coffey,* at p. 821.)

*Alejandro N.* distinguished *Coffey* on the basis that unlike section 17, section 1170.18 was not specified in section 299, subdivision (f), as one of the statutes that did not authorize a court to relieve a person of the obligation to provide a DNA sample. *Alejandro N.* stated: "*Coffey* noted that section 17, subdivision (b) provides that a wobbler that is treated as a misdemeanor at sentencing ' "is a misdemeanor for all purposes," ' but concluded this provision did not apply to the DNA expungement request at issue before the court. [Citation.] *Coffey* explained that the Legislature had expressly stated in the DNA expungement statute (§ 299, subd. (f)) that 'a defendant whose sentence is reduced to a misdemeanor under section 17, subdivision (b), *must* provide DNA samples. . . .' [Citations.] [¶] Unlike the circumstances in *Coffey*, there is no statutory provision reflecting a Legislative or voter determination that a DNA sample

circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170."

9

should be retained for an offender whose offense has been designated a misdemeanor under Proposition 47. Absent express legislative or voter direction on this matter, we decline to judicially create a DNA retention exception here. . . ." (*Alejandro N., supra*, 238 Cal.App.4th at pp. 1229–1230, fn. omitted.)

In short, because section 299, subdivision (f), did not specify section 1170.18 in its list of statutes that do not relieve a defendant of the requirement of providing a DNA sample, *Alejandro N.* rejected the People's argument that reduction of a felony to a misdemeanor under section 1170.18 should be viewed the same as reduction of a felony to a misdemeanor under section 17 for purposes of DNA expungement. However, Bill No. 1492's amendment of section 299, subdivision (f), provided what *Alejandro N.* noted was missing from that subdivision—namely, an express reference to section 1170.18. As a result of that amendment, section 299, subdivision (f) now, in the words of the *Alejandro N.* court, "reflect[s] a Legislative or voter determination that a DNA sample should be retained for an offender whose offense has been designated a misdemeanor under Proposition 47." (*Alejandro N., supra*, 238 Cal.App.4th at pp. 1229–1230.) As noted in *In re C.H.* (2016) 2 Cal.App.5th 1139, rev. granted Nov. 16, 2016, S237762 (*C.H.*), "a court's declaration of misdemeanor status renders an offense a misdemeanor *for all purposes,* not *at all times*." (*Id.* at p. 1146.)[9]

---

[9] In addition to the express references to section 17 and section 1170.18 in section 299, subdivision (f), we are persuaded by following analysis in *C.H.* that the term "misdemeanor for all purposes" has the same meaning in both statutes: " ' "It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these

Harris argues that section 299, subdivision (f), does not prohibit expungement of a DNA sample because it does not address *expungement* of DNA samples but rather limits a court's authority to "*relieve*" a person of the administrative "duty to *provide*" a DNA sample. We conclude section 299, subdivision (f) limits a court's authority to order expungement. Section 299 is the statute that governs DNA expungement. The fact that subdivision (f) of section 299 is located in section 299 (the expungement statute) rather than section 296, which addresses requirements to *provide* DNA samples, indicates that it was intended to address a court's authority to order expungement.

Further, the *J.C.* court explained that although the language of section 299, subdivision (f) "appears to prohibit courts only from preventing the *provision* of a DNA sample, rather than prohibiting *expungement* of the record of a sample already provided, . . . the specific statutory references in section 299(f) demonstrate the latter

exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts." ' [Citations.] Because 'identical language appearing in separate statutory provisions should receive the same interpretation when the statutes cover the same or analogous subject matter' [citations], and because Proposition 47 and section 17 both address the effect to be given the redesignation of a felony (or a wobbler that starts out as a felony) as a misdemeanor, we are presumptively obligated to construe the phrase 'misdemeanor for all purposes' under Proposition 47 to mean the same as it does under section 17—namely, that a felony offense redesignated as a misdemeanor under Proposition 47 retains its character as a felony prior to its redesignation, and is treated as a misdemeanor only after the time of redesignation. This is precisely why the appeal of a redesignated offense under Proposition 47 lies with the Court of Appeal and not the appellate division— namely, because the redesignation does not retroactively convert the offense to a misdemeanor at the time of charging, which is the relevant point in time for determining where an appeal lies." (*C.H., supra*, 2 Cal.App.5th 1139 at pp. 1146–1147.) We cite *C.H.* as persuasive authority pending review by the California Supreme Court. (Cal. Rules of Court, rule 8.1115(e).)

11

circumstance is also covered." (*J.C., supra*, 246 Cal.App.4th at p. 1472, italics added.)

The *J.C.* court noted that "prior to the addition of section 1170.18 by Bill No. 1492, section 299(f) referred to sections 17, 1203.4, and 1203.4a." (*J.C.,* at p. 1472.) The court further noted that section 17, which addresses wobbler offenses, provides that when a wobbler is designated or declared to be a misdemeanor, it is "a misdemeanor for all purposes" (§ 17, subds. (b) & (c)), and noted that sections 1203.4 and 1203.4a govern the dismissal of charges following a successful completion of probation.

The *J.C.* court reasoned: "These statutes have one thing in common. Their application generally results in the reduction of a felony conviction suffered by a defendant to something less serious—either a misdemeanor under section 17 or, in the case of sections 1203.4 and 1203.4a, dismissal altogether. The felony conviction necessarily required provision of a DNA sample, but the defendant would not have been required to provide a sample had the conviction been designated a misdemeanor from the outset or if there had been no criminal charges at all. *The unmistakable implication of the reference to these statutes in section 299(f) is that the section was intended to prohibit trial courts, when reducing or dismissing charges pursuant to the listed statutes, from also expunging the DNA record given in connection with the original felony conviction.*" (*J.C., supra*, 246 Cal.App.4th at pp. 1473–1474.) "[T]he inclusion of [these] statutes makes sense only if section 299(f) is interpreted as precluding expungement when an originally qualifying offense is reduced to a nonqualifying offense in the course of judicial proceedings." (*Id.* at p. 1475.)

12

We agree with *J.C.*'s reasoning. When a person's felony conviction is reduced to a misdemeanor or something else less serious under any of the statutes specified in section 299, subdivision (f), including section 1170.18, the person has already provided a DNA sample. Thus, subdivision (f) necessarily contemplates expungement of DNA samples—i.e., the voters and Legislature in respectively enacting and amending subdivision (f) intended to prohibit DNA expungement when a felony is reduced to something less serious under the statutes identified in subdivision (f). As the *J.C.* court observed, "the use of the phrase 'relieve . . . of the separate administrative duty to provide' is not an intuitive way to refer to expungement, but the language has been so understood since the issuance of *Coffey,* over 10 years ago." (*J.C., supra*, 246 Cal.App.4th at p. 1475, fn. omitted.)

B. <u>Bill No. 1492 did not amend Proposition 47</u>

Harris contends that Bill No. 1492's amendment of section 299, subdivision (f), constitutes an impermissible amendment of Proposition 47.[10] The People argue that Bill No. 1492 does not amend Proposition 47 but rather clarifies Proposition 69. We agree that Bill No. 1492 does not amend Proposition 47.

---

[10]    Proposition 47 provides that " '[t]he provisions of this measure may be amended by a two-thirds vote of the members of each house of the Legislature and signed by the Governor so long as the amendments are consistent with and further the intent of this act.' " (*C.B., supra*, 2 Cal.App.5th at p. 1134, dis. opn. of Pollack, J.) "Bill No. 1492 . . . was passed by the required two-thirds vote." (*Id.* at p. 1135, fn. 8.)

13

An amendment to a voter initiative is " 'a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision.' [Citation.] But this does not mean that any legislation that concerns the same subject matter as an initiative, or even augments an initiative's provisions, is necessarily an amendment for these purposes. 'The Legislature remains free to address a " 'related but distinct area' " [citations] or a matter that an initiative measure "does not specifically authorize *or* prohibit." ' [Citations.] In deciding whether [a statutory] provision amends [an initiative], we simply need to ask whether it prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571 (*Pearson*).)

The *J.C.* court concluded that Bill No. 1492 does not amend Proposition 47 because Proposition 47 "neither requires nor prohibits the expungement of DNA records. . . ." (*J.C., supra*, 246 Cal.App.4th at p. 1482.) We agree with that conclusion, and with the *C.B.* majority's observation that Bill No. 1492 did not amend section 1170.18 of Proposition 47, but rather "clarified section 299 [as amended by Proposition 69] by adding section 1170.18 to the otherwise nonexhaustive list of statutes in section 299, subdivision (f) barring lower courts from excusing qualifying defendants from their administrative duty to submit DNA." (*C.B., supra*, 2 Cal.App.5th at p. 1127.)

In any event, to the extent Bill No. 1492 is properly viewed as an amendment of Proposition 47 rather than a clarification of Proposition 69 or Proposition 47, it satisfies the requirement that any amendment be consistent with and further the proposition's intent. As the *J.C.* court reasoned, "[b]ecause . . . Proposition 47 does not clearly either

14

require or prohibit expungement of the records of previously provided DNA samples, there is no basis for finding the prohibition of expungement in Bill No. 1492 to be inconsistent with the intent of the proposition." (*J.C., supra*, 246 Cal.App.4th at p. 1483, fn. omitted.) Bill No. 1492 did not impermissibly amend Proposition 47.

C. Retention of Harris's DNA sample does not violate her constitutional rights

1. *Equal protection rights*

Harris contends that permitting the state to retain her DNA sample and genetic profile would violate her state and federal constitutional right to equal protection of the laws because she is similarly situated to persons convicted of misdemeanors after the passage of Proposition 47 who are not required to provide DNA samples. She argues there is no rational basis for treating misdemeanants whose felony convictions were reduced to misdemeanors under Proposition 47 differently from post-Proposition 47 misdemeanants with respect to DNA collection and retention.

"The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. [Citation.] We do not inquire whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged. [Citation.] This prerequisite means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified." (*People v. Moreno* (2014) 231 Cal.App.4th 934, 941–942.)

Assuming that for equal protection purposes, misdemeanants whose felonies were reduced to misdemeanors under Proposition 47 are similarly situated to post-Proposition 47 misdemeanants with respect to DNA collection, we consider whether disparate treatment of the two groups is justified, noting that " '[a] rational basis test applies to equal protection challenges based on sentencing disparities.' " (*People v. Dobson* (2016) 245 Cal.App.4th 310, 318.)  "Where, as here, a disputed statutory disparity implicates no suspect class or fundamental right, 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." '  [Citations.]  'This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve.  Nor must the underlying rationale be empirically substantiated.  [Citation.]  While the realities of the subject matter cannot be completely ignored [citation], a court may engage in " 'rational speculation' " as to the justifications for the legislative choice [citation].  It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record." '  [Citation.]  To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity.  [Citations.]  If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.)

In *People v. Floyd* (2003) 31 Cal.4th 179 (*Floyd*), the California Supreme Court noted there is no authority "that recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense."

16

(*Id.* at p. 188.)  " 'It is not unconstitutional for the legislature to confer such benefit only prospectively, neither is it unconstitutional for the legislature to specify "a classification between groups differently situated, so long as a reasonable basis for the distinction exists. " ' "  (*Id.* at pp. 189–190.)[11]  " '[T]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.' "  (*Id.* at p. 191.)  Accordingly, it is not a denial of equal protection to treat misdemeanants whose convictions were reduced to misdemeanors under Proposition 47 differently from post-Proposition 47 misdemeanants with respect to DNA collection and retention.

The *C.H.* court explained "[t]here is a rational basis supporting the retention of DNA obtained from offenders convicted of felonies before Proposition 47 whose crimes have been reduced to misdemeanors.  Proposition 69 declares that an expansive DNA database is:  '(1) The most reasonable and certain means to accomplish effective crime solving in California, to aid in the identification of missing and unidentified persons, and to exonerate persons wrongly suspected or accused of crime; [¶] (2) The most reasonable and certain means to solve crime as effectively as other states which have found that the majority of violent criminals have nonviolent criminal prior convictions, and that the majority of cold hits and criminal investigation links are missed if a DNA database or

---

11    The *Floyd* court noted the following legitimate government interest in treating defendants convicted and sentenced before the effective date of a punishment-lessening statute differently from those sentenced after the effective date of the statute:  " 'The Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.' "  (*Floyd, supra*, 31 Cal.4th at p. 190.)

data bank is limited only to violent crimes; [¶] (3) The most reasonable and certain means to rapidly and substantially increase the number of cold hits and criminal investigation links so that serial crime offenders may be identified, apprehended and convicted for crimes they committed in the past and prevented from committing future crimes that would jeopardize public safety and devastate lives; and [¶] (4) The most reasonable and certain means to ensure that California's Database and Data Bank Program is fully compatible with, and a meaningful part of, the nationwide Combined DNA Index System (CODIS).' " (*C.H., supra*, 2 Cal.App.5th at pp. 1151–1152.)

Considering these legitimate governmental objectives articulated in Proposition 69, we agree with the *C.H.* court's conclusion that "[p]reserving the integrity and vitality of the state's DNA database system provides a rational basis to retain the DNA and profiles of offenders who were convicted before enactment of proposition 47, even if they would not be required to provide DNA if convicted after its effective date. It is reasonable to conclude that a more comprehensive database, with samples from more offenders, is a more effective and utilitarian database." (*C.H., supra*, 2 Cal.App.5th at p. 1152.) The state's retention of Harris's DNA sample and genetic profile does not violate her state and federal constitutional right to equal protection of the laws.

2. *Privacy Rights*

Harris contends that the state's continued retention of her DNA sample and genetic profile violates her right of privacy under the federal and state constitutions. In particular, she contends that the government's retention of her DNA violates her right of privacy under the Fourth Amendment. We conclude that neither the collection of Harris's

18

DNA sample nor the state's retention of the sample after her felony conviction was reduced to a misdemeanor under Proposition 47 violated her privacy rights under the federal and state constitutions.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." (U.S Const., 4th Amend.) "[U]sing a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search. Virtually any 'intrusio[n] into the human body,' [citation], will work an invasion of ' "cherished personal security" that is subject to constitutional scrutiny' " (*Maryland v. King* (2013) __ U.S. __ [133 S.Ct. 1958, 1968-1969] (*King*).)

" 'As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is "reasonableness." ' [Citation.] [¶] 'Reasonableness . . . is measured in objective terms by examining the totality of the circumstances' [citation], and 'whether a particular search meets the reasonableness standard " 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' " ' " (*People v. Robinson* (2010) 47 Cal.4th 1104, 1120 (*Robinson*).)

In determining whether a search for which a warrant is not required violates the Fourth Amendment, " 'we balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable.' [Citation.] This application of 'traditional standards of reasonableness' requires a court to weigh 'the promotion of

legitimate governmental interests' against 'the degree to which [the search] intrudes upon an individual's privacy.' " (*King, supra*, 133 S.Ct. at p. 1970.)

"California's Constitution includes an express right to privacy (Cal. Const. art. I, § 1), which in many contexts is broader and more protective of privacy than the right to privacy implied in the federal Constitution. [Citation.] [¶] The evaluation of privacy claims under our state Constitution requires (1) the identification of a specific, legally protected privacy interest, (2) a determination whether there is a reasonable expectation of privacy in the circumstances, (3) an assessment of the extent and gravity of the alleged invasion of privacy, and (4) a balancing of the invasion against legitimate and competing interests. [Citation.] The key element in this process is the weighing and balancing of the justification for the conduct in question against the intrusion on privacy resulting from the conduct whenever a genuine, nontrivial invasion of privacy is shown." (*Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 508–509.) "[T]he balancing process required by our state constitutional right of privacy is precisely the same process that other jurisdictions have applied in upholding the validity of DNA data base and data bank acts [under the Fourth Amendment]." (*Id.* at p. 509.)

Thus, with respect to both the federal and California constitutions, we determine whether the state's retention of Harris's DNA sample violates her constitutional right of privacy by balancing the intrusion on her privacy resulting from the retention against the legitimate and competing state interests in the retention.

The collection of Harris's DNA sample was minimally intrusive on her privacy. In *King*, the United States Supreme Court, in rejecting a Fourth Amendment challenge to

20

Maryland's DNA Collection Act, observed that "[t]he expectations of privacy of an individual taken into police custody 'necessarily [are] of a diminished scope.' " (*King, supra*, 133 S.Ct. at p. 1978; accord, *Haskell v. Harris* (9th Cir. 2012) 669 F.3d 1049, 1058 (*Harris*) [Felony arrestees have a "significantly diminished expectation of privacy."].) "It is beyond dispute that 'probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest.' " (*King, supra*, 133 S.Ct. at p. 1970.)

The procedure of collecting DNA by buccal swab is minimally intrusive physically. "The procedure is quick and painless. The swab touches inside an arrestee's mouth, but it requires no 'surgical intrusio[n] beneath the skin,' [citation], and it poses no 'threa[t] to the health and safety' of arrestees. . . ." (*King, supra*, 133 S.Ct. at p. 1968.) "Nearly half a century ago, the Supreme Court upheld as 'reasonable' a hospital's extraction of a blood sample, which was done '[a]t the direction of a police officer' who was investigating a person suspected of driving under the influence." (*Harris, supra*, 669 F.3d at p. 1058, citing *Schmerber v. California* (1966) 384 U.S. 757, 758, 771.) Collecting DNA by buccal swab "is far less invasive than the blood test approved in *Schmerber*. . . . The buccal swab cannot seriously be viewed as an unacceptable violation of a person's bodily integrity." (*Harris,* at p. 1059.) And "a swab of this nature does not increase the indignity already attendant to normal incidents of arrest." (*King,* at p. 1979.)

Moreover, the state's use of DNA samples collected under the Database Act is strictly limited by statute. DNA samples may be released only to law enforcement agencies (§ 299.5, subd. (f)), and any person who knowingly uses a DNA sample "for

21

other than criminal identification or exclusion purposes, or for other than the identification of missing persons, or who knowingly discloses DNA or other forensic identification information . . . to an unauthorized individual or agency, for other than criminal identification or exclusion purposes, or for the identification of missing persons . . . [is subject to punishment by] imprisonment in a county jail not exceeding one year or by imprisonment in the state prison for 16 months, or two or three years." (§ 299.5, subd. (i)(1)(A).)

"A DNA profile contains only thirteen 'junk DNA' markers that are not linked to any genetic or physical trait. They are used only to identify the individual." (*Harris, supra*, 669 F.3d at p. 1059; § 295.1, subd. (a) ["The Department of Justice shall perform DNA analysis and other forensic identification analysis . . . only for identification purposes."].) We agree with the *Harris* court that "[g]iven the minimal amount of information contained in a DNA profile, . . . DNA, as collected and used under the 2004 Amendment [to the DNA Database Act], is substantially indistinguishable from traditional fingerprinting as a means of identifying arrestees and, incidentally, tying arrestees to criminal investigations." (*Harris, supra*, 669 F.3d at pp. 1059–1060.) "With regard to any privacy interest in identifying information, it is established that individuals in lawful custody cannot claim privacy in their identification." (*Robinson, supra*, 47 Cal.4th at p. 1121.)

Addressing the governmental-interest side of the constitutional right of privacy balancing test, the *King* court observed that "[w]hen probable cause exists to remove an individual from the normal channels of society and hold him in legal custody, DNA

22

identification plays a critical role in serving [governmental] interests." (*King, supra*, 133 S.Ct. at p. 1971.)  Those interests include knowing who has been arrested; ensuring that the custody of an arrestee does not create inordinate risks for facility staff and detainees; ensuring that persons accused of crimes are available for trial; preventing crime by arrestees by assessing the danger they pose to the public; and freeing a person wrongfully imprisoned for a crime the arrestee committed.  (*Id.* at pp. 1972–1974).  As noted, Proposition 69 identified California's interests in maintaining an expansive DNA database, including the identification of missing and unidentified persons; effective crime solving; identification, apprehension, and conviction of serial offenders; and ensuring that California's DNA database is compatible with and a part of CODIS.  (*C.H., supra*, 2 Cal.App.5th at pp. 1151–1152.)

We conclude that these legitimate governmental interests served by buccal swab collection of DNA samples from felony arrestees greatly outweigh the minimal intrusion on privacy that the collection entails.  As the *King* court stated, "DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure.  When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment."  (*King, supra*, 133 S.Ct. at p. 1980.)

Because the collection of Harris's DNA sample was lawful, she does not have a constitutional right to its expungement.  (*People v. Baylor* (2002) 97 Cal.App.4th 504,

23

507–508; *Coffey v. Superior Court* (2005) 129 Cal.App.4th 809, 823.) California's interests in maintaining an expansive DNA database justify both the collection and retention of DNA samples from persons required to provide them under section 296, subdivision (a). Considering the limited scope of the DNA information collected, the strict limits on the state's use of the DNA, and the criminal punishment imposed on persons who violate those limitations, we conclude that the state's legitimate interests in the retention of Harris's DNA sample outweigh any privacy interest that Harris has in its expungement.

DISPOSITION

The order denying Harris's motion to expunge her DNA sample from the state's database is affirmed.


BENKE, J., Acting P.J.

WE CONCUR:



HUFFMAN, J.



AARON, J.